## JOHN LECHMAN v. JOHN W. HOOPER.

1. The plaintiff was in the employ of a person in the business of putting up an iron lintel, &c., and, in the course of his employment, went to a building that was being erected by the defendant, who was a mason ; one of the walls having been just built was in a dangerous condition, and the defendant directed one of his men to make the wall safe ; the wall, being neglected, fell upon the plaintiff, who therefore brought suit. There was some evidence which, it was contended, tended to show that the co-employe of the plaintiff, who was in charge of that particular job, was notified of the danger in question. *Held*, that notice of the nuisance was due to the plaintiff personally, and that notice to his co-employe would not affect him.

2. The principle of decision is, that the tortfeasor owed to the plaintiff the duty to apprise him of the lurking danger, and that the plaintiff had not appointed his master, or any of the servants of such master, his agent to receive for him such notice.

---

Motion for a new trial.

· The plaintiff was an apprentice to one Duncan Mackenzie, in the iron business. The firm of Furman & Kite, being contractors to put up an engine house, engaged Mackenzie to supply and erect the lintels of the door, consisting of iron uprights and cross pieces. The plaintiff and two of his fellow-apprentices were sent by their employer, Mackenzie, to put these lintels in place, and in raising a derrick for that purpose in the engine house, one of the walls fell upon and injured the plaintiff.

The wall in question had been erected by the defendant under contract with Furman & Kite, and there was evidence tending to show that it had been left in a dangerous condition for want of shoring up.

The complementary facts are sufficiently stated in the opinion.

The verdict below was for the plaintiff.

Argued at February Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the rule, *R. S. Woodruff.*

Contra, *H. N. Barton* and *C. H. Beasley.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The wall that fell and injured the plaintiff had been built by the defendant, and, as the jury has found, had been left by him in a dangerous condition. Being conscious of that fact, he had directed one of his men to prop it up in the usual manner—an order that had not been adequately obeyed, and hence the accident.

The verdict acquits the plaintiff of all negligence on his part.

The only connection between the plaintiff and defendant was, that they were engaged in doing work on the same structure, by force of independent contracts with the builder, the defendant having undertaken to do the mason work and

the master of the plaintiff to do the iron work. The plaintiff had been sent by his employer to put in the lintels to the door of the building in question, and, while assisting in raising a derrick for that purpose, had been hurt by the falling of the wall already mentioned.

A single question of law was started at the trial.

It was insisted that there was some evidence from which the jury could have properly inferred that one Bechtel, who was a co-employe with the plaintiff, and who had been directed to oversee that particular job, had received an intimation from one of the employes of the defendant that should have put him on his guard, with respect to the dangerous condition of the building. It will be assumed, for the present, that this intimation was such that by its force Bechtel was chargeable with knowledge of the danger, and that, without apprising the plaintiff of the fact, he led him into the peril that so disastrously resulted.

At the trial, the presiding judge charged the jury that, even if the apprentice was the overseer of the job, that his knowledge of the lurking danger was not to be imputed to the plaintiff, and that to disentitle the plaintiff to a recovery it should appear that he himself knew, or from the circumstances should have known, of the impending peril.

This statement of the law is now challenged in this court.

But it is conceived that the rule thus declared at the trial was correct.

The legal situation was this: The defendant had erected this wall, and, therefore, the law imposed on him the duty to put it in a safe condition, or to give warning of its unsafe condition, and this was a duty he owed to each individual person who should lawfully come upon the premises. Being aware of such responsibility, he directed one of his men to make the work safe; but, instead of doing this, the latter, as it is claimed, warned Bechtel, the co-employe of the plaintiff and the foreman of the work for the time being, of the danger. But how is it that the plaintiff is to be affected by such a notice which it is not pretended was communicated to him.

There seems no ground, not even the least, for asserting that Bechtel was his agent for the purpose of receiving such a notice in his behalf. An agency cannot be created without the consent of the principal, express or implied. In this instance there is no suggestion of an actual appointment by the plaintiff of this foreman as his agent, and it is not perceived that there is any circumstance from which it can be inferred. The defendant, as has been said, owed the plaintiff the duty of giving him personal notice of such a danger as this. When and how did the latter waive the discharge of such duty? If he made such waiver it was altogether gratuitous. By his contract with his own employer he agreed to pretermit, so far as such employer was concerned, all claim for losses he might suffer by reason of the negligence of his co-employes, such detriments being regarded as part of the necessary risks of his employment; but, as far as is known, it has never been supposed that he also thereby stipulated to forego any of his legal rights, or any part of them, due to him from other persons. The agreement of service has no relation, either by expression or implication, to the obligations imposed by law on third persons for the benefit of the servant. The master has no interest in a waiver by the servant of the right of the latter to a cautionary notice from a tortfeasor who has erected a dangerous nuisance, nor is there any consideration moving to the former as an inducement to such waiver. The right to a direct notice of this sort is a valuable one, being one of those important safeguards that the law provides for the personal security of the citizen, consequently, its relinquishment should not be impaired except upon the plainest ground. It is conceived that it would be both unreasonable and impolitic to conclude that the servant, by his contract, constitutes his master, or his master's representative, his agent to take charge of his personal safety when jeoparded by the acts of strangers. Such an assumed agency would impose an additional hardship upon this class of deserving persons, who, in the pursuit of their livelihood, are already exposed, of necessity, to much danger,

and who, many times, are not in a situation to redress their wrongs.

No trace of the doctrine thus claimed is to be found in the books; a circumstance that appears to be unexplainable, on the supposition that it is possessed of any substantial basis, as it is obvious the doctrine would apply with decisive force to many of the cases wherein a workman, in the course of his employment, receives a hurt from the negligence of strangers. No adjudication has been referred to, nor has any been discovered, that indicates that the workman, under the circumstances in question, is not entitled to decide for himself whether or not he will encounter these perils or avoid them.

But if we reject altogether this notion of an agency of this kind proceeding from the workman, this subject becomes readily adjustable by the application of the ordinary rules of law. This is, then, the legal posture of affairs: The erector of the nuisance must give warning of its existence; he can perform this duty either personally, or by one of his own servants, or, as is often the course adopted, through the medium of the foreman of a body of men who are entitled to be warned. Practically either of such methods is safe, as, in the main, every person having a right to notice of the danger receives it; but in case of a miscarriage by reason of the neglect of the foreman, who is to abide the consequences? Assuredly it is he whose duty the negligent foreman failed to fulfill. In the present instance the defendant was bound to give the notice in question to the plaintiff; he attempted to convey it through a co-employe of the plaintiff, and thereby such co-employe became the agent, *pro hac vice,* of the defendant, and, in no sense, the agent of the plaintiff. This would seem to be the plain legal result, and it appears to be a consequence that is accordant with justice and public policy. The law should relax none of its strictness in favor of him who, by his rashness or negligence, has placed an innocent person in peril. The wisdom of this course is strikingly exemplified by the facts of the present case. The agent of the defendant, as he claims, gave notice to the foreman, being a co-employe of the plaintiff,

of the danger; he then stood by and saw such foreman lead the plaintiff into the danger; he could not have been certain that his warning had been communicated to the plaintiff; yet he said nothing, though a word from him would have averted the catastrophy. Under such circumstances, and in view of the rule, *respondeat superior*, it does not seem possible to conclude that, in this transaction, the defendant is legally blameless.

The rule of law regulating the trial was correct.

But if this were otherwise, still, this rule should not be made absolute, as there is no evidence in the case that would support a verdict founded on the idea that a warning of danger was given even to Bechtel.

There are but two of the defendant's witnesses who testified on this subject. One of these was the foreman of the defendant, who had been left with instructions to put the wall in order. This witness said: "Then I went back to put up the first brace, and when I got that first brace up then they were coming in with the derrick; and I went to him [Bechtel] and said that ' You don't *need to bring that* in here; there is Mr. Prior's derrick that you can use, *and you will interfere.*'" The second witness testified to the same effect, saying: "Mr. Merrick [the defendant's foreman, being the former witness], came down there and said to these gentlemen, ' I don't see why you want to bring that in; here is a derrick standing; you can use that.'"

This statement, such as it is, was denied to be true by the plaintiff and his associates, and the jury have found that the appearance of things at the place in question was not such as to put the plaintiff on his guard.

It seems obvious, therefore, that from such premises as these the jury would not have been warranted to find that a warning of danger had been given either to the plaintiff or to any of his co-employes. Accepting the testimony of the defendant's witnesses as wholly true, there is nothing proved in the way of showing that the plaintiff or his associates received even the faintest suggestion that they should not

enter this building on account of a latent danger. The hint given was not of the presence of a peril, but of an inconvenience. If a verdict had been rendered on this ground in favor of the defence, it could not have been sustained by the court.

The rule should be discharged.