Dene Torgesen, Appellant, *v.* Carl H. Schultz, Respondent.

Negligence — Action for Personal Injuries Received from Explosion of Bottle of Aerated Water — When Negligence of Vendor Question of Fact for Jury. Where in an action to recover from the vendor of a bottle of aerated water damages for personal injuries alleged to have been received by plaintiff from the explosion of the bottle, it appears that the vendor had knowledge that the bottles used for aerated water charged at a certain pressure were liable to explode unless first subjected to an adequate test, and there is evidence tending to show that the test used by such vendor was insufficient to render it reasonably certain that bottles, charged at such pressure, would not explode when used as customers might be expected to use them, the question of the defendant's negligence should be submitted to the jury and a dismissal of the complaint is erroneous.

*Torgesen* v. *Schultz*, 112 App. Div. 911, reversed.

(Argued April 15, 1908, decided May 19, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 12, 1906, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry W. Taft* and *Edwin P. Grosvenor* for appellant. The court erred in not submitting to the jury the questions whether under the circumstances proven in the case the defendant was not negligent of a duty which it owed to the plaintiff in selling the bottle in question without subjecting it to a more careful and thorough test than it did, and whether the explosion was due to a weakness which such a test would have disclosed. (*Thomas* v. *Winchester*, 6 N. Y. 397 ; *Devlin* v. *Smith*, 89 N. Y. 470 ; *Coughtry* v. *G. W. Co.*, 56 N. Y. 124 ; *Loop* v. *Litchfield*, 42 N. Y. 351 ; *Losee* v. *Clute*, 51 N. Y. 494 ; *Davies* v. *P. H. E. Co.*, 65 Hun, 573 ; *Kahner* v. *O. E. Co.*, 96 App. Div. 169 ; *Bishop* v. *Weber*, 139 Mass. 411 ; *Wellington* v. *D. K. O. Co.*, 104 Mass. 64 ; *Elkins* v. *McKean*, 79 Penn. St. 493.) The trial court erred in not leaving to the jury the question whether the defendant should not have warned the plaintiff by some notice calculated to call attention to the fact that sudden changes of temperature rendered the bottle liable to explode. (*Farrant* v. *Barnes*, 11 C. B. [N. S.] 561 ; *Wellington* v. *D. K. O. Co.*, 104 Mass. 64.)

*Charles C. Nadal* for respondent. The testimony as to the experiments with siphons is valueless for any purpose whatever in this case and should not have been received. (*Fillo* v. *Jones*, 2 Abb. Ct. Dec. 121 ; *Yates* v. *People*, 32 N. Y. 509.) The defendant's duty, in any event, was only to use ordinary care. (*Bruckel* v. *Milhau*, 116 App. Div. 832.) The defendant was justified in following the practice which had existed for a great many years without any injury having resulted. (*Bruckel* v. *Milhau*, 116 App. Div. 832 ; *Burke* v. *Witherbee*, 98 N. Y. 562 ; *McKenzie* v. *Waddell*, 89 App. Div. 415 ; *Reiss* v. *N. Y. S. Co.*, 128 N. Y. 103 ; *Del Sejnore* v. *Hallinan*, 153 N. Y. 274 ; *Gould* v. *Slater*, 17 N. E. Rep. 531.)

WILLARD BARTLETT, J. The plaintiff has suffered the loss of an eye by reason of the explosion of a siphon bottle of aer-

ated water filled and put upon the market by the defendant corporation. The siphon had been charged at a pressure of 125 pounds to the square inch. The plaintiff was a domestic servant and on July 1, 1901, between one and two o'clock in the afternoon she received at the door of her employer's house in the city of New York two siphons which had been filled with water by the defendant and which had been purchased from a druggist who had obtained them from the defendant. The day was very hot, the registered temperature at the weather bureau being as follows : 1 P. M., 95 degrees ; 2 P. M., 96 degrees ; 3 P. M., 96 degrees ; 4 P. M., 96 degrees ; 5 P. M., 96 degrees ; 6 P. M., 97 degrees ; 7 P. M., 96 degrees, and 8 P. M., 93 degrees. Upon receiving the siphons the plaintiff took them to a room in the third story, where they remained until between 7 and 8 o'clock in the evening, when she carried them down stairs and placed them in a standing position in a pan containing ice, so that one side of each bottle was against the ice. As she turned away one of the siphons exploded with the result stated.

To show the necessity of taking precautions to prevent such explosions, and also to show the extent of the precautions actually taken by the defendant to that end, plaintiff's counsel read in evidence certain extracts from a printed circular of the defendant, and counsel for the defendant also read certain other extracts, all of which taken together are as follows :

" We take all possible precautions to guard against accidents by not allowing any siphons or bottles to leave our premises without first being thoroughly tested. On account of the sudden change of temperature any defect in the glass will at once cause the siphon bottle to break. The accompanying cut shows our siphon testing department. All siphon bottles are imported direct from Austria and are received in large casks. They are unpacked and filled with water at a temperature of from 98 to 100 F. They are then put in cages and subjected to a hydrostatic pressure of 350 lbs. to the square inch. This pressure is allowed to remain for about 30 seconds  Then it is reduced to a pressure of 100 lbs. to the

square inch, and the entire cage containing five siphons is then submerged in a tank containing cracked ice and water. On account of the sudden change of temperature any defect in the glass will at once cause the siphon bottle to break. The second step in our test is the only definite method to discover flaws in the anneal of the glass, and is by far severer than any condition a siphon is ever subjected to in the ordinary run of our business."

The plaintiff also called as an expert witness an instructor in physics at Columbia University, who described a series of experimental tests which he had made upon a number of siphon bottles of aerated water sold by the defendant. These experiments were conducted by subjecting the siphons to conditions designed to reproduce approximately those which existed at the time when the explosion occurred by which the plaintiff was injured. Out of seventy-one bottles which were thus tested five exploded, and all of these explosions occurred within half a minute after the bottles were placed in contact with ice. It furthermore appeared that when the siphons came back to the defendant, after having once been distributed to its customers, they were not tested again, and that the defendant had no means of determining how many times the bottles were sent out after they had been filled and after they were returned for filling, although they were probably sent out a large number of times.

It is manifest that there was no contract relation between the plaintiff and the defendant, but the defendant is sought to be held liable under the doctrine of *Thomas* v. *Winchester* (6 N. Y. 397), and similar cases based upon the duty of the vendor of an article dangerous in its nature, or likely to become so in the course of the ordinary usage to be contemplated by the vendor, either to exercise due care to warn users of the danger or to take reasonable care to prevent the article sold from proving dangerous when subjected only to customary usage. The principle of law invoked is that which was well stated by Lord Justice Cotton in *Heaven* v. *Pender* (L. R. [11 Q. B. D.] 503), as follows: "Any one who leaves

a dangerous instrument, as a gun, in such a way as to cause danger, or who without due warning supplies to others for use an instrument or thing which to his knowledge, from its construction or otherwise is in such a condition as to cause danger, not necessarily incident to the use of such an instrument or thing, is liable for injury caused to others by reason of his negligent act."

A case in which the accident closely resembled that which happened to the plaintiff in the present action is *O'Neill* v. *James* (138 Mich. 567). The plaintiff there was a bartender employed by his brother. The defendant was a bottler of champagne cider charged with carbonic acid gas at a pressure of sixty pounds or less to the square inch. The defendant sold to the plaintiff's employer a quantity of this cider, which was placed in an ice box, and while the plaintiff was taking a bottle of the cider out of the ice box it exploded and a piece of the glass destroyed one of his eyes. He recovered a verdict, but the judgment thereon was reversed on the ground that there was no evidence in the case from which the inference could be drawn that the defendant had any knowledge of the dangerous character of the thing sold, inasmuch as the testimony of both sides showed that champagne cider bottled at a pressure of sixty pounds or under was "a harmless, ordinary article of commerce, usually kept for sale where soft drinks are sold." The court held, however, that if the testimony for the plaintiff had tended to show that the explosion could not have occurred if the bottle had been charged in the usual way, and the testimony of the defendant that it was so charged and that the explosion might have been otherwise caused, then the issue of the defendant's negligence would have been a question for the jury. The decision reversing the judgment, therefore, was merely a recognition of the doctrine that there must be knowledge of the dangerous character before the defendant can be held liable.

Without questioning in the least the applicability of this doctrine to the case at bar, I think there was sufficient evidence of the defendant's knowledge in this respect to require a sub-

mission of the issues to a jury. The language of the defendant's circular tends to show that it was well aware that siphons charged under a pressure of 125 pounds to the square inch were liable to explode unless the bottles had been first subjected to an adequate test. This is plainly inferable from the statement: "We take all possible precautions to guard against accidents." There could be no possible occasion for this assertion unless accidents were likely to happen in the absence of proper precaution to avert them. The testimony of the expert witness to which we have referred tended to show, although, of course, it did not necessarily establish the fact, that the test described in the defendant's circular (which, it may fairly be assumed, was the severest test applied to the siphons) was insufficient to establish that the bottles would not explode when used as customers might be expected to use them. The defendant might reasonably be held chargeable with knowledge that it was customary, especially in hot weather, to place siphons charged with aerated water in contact with ice, and in view of this fact a jury might well find that the tests applied to such bottles should be such as to render it tolerably certain that they would not explode when thus used. As has already been suggested, the expert testimony indicated that the test actually employed by the defendant was not adequate to justify such a conclusion.

It may very well be that the defendant, if put to its proof on the subject, may establish the adequacy of its test and that nothing further can reasonably be required to be done to assure the safety of those making use of their charged siphons as against explosions of the character which injured the plaintiff, but upon the evidence as it stood at the close of her case I think there was enough to entitle the plaintiff to have the question of the defendant's negligence submitted to the jury.

The judgment should be reversed and a new trial granted, costs to abide the event.

Cullen, Ch. J., Gray, Haight, Vann, Hiscock and Chase, JJ., concur.

Judgment reversed, etc.