## PENNSYLVANIA STEEL CO. v. ELMORE & HAMILTON CONTRACTING CO.

### (Circuit Court, N. D. New York. December 21, 1909.)

1. **TORTS (§ 11\*)—BREACH OF CONTRACT—WILLFUL VIOLATION—RIGHTS OF SUB-CONTRACTOR.**

    Where a subcontractor for the construction of concrete piers for a bridge, with knowledge of the use to which the piers were to be placed, and that plaintiff, a subcontractor for the iron work, would necessarily place heavy loads and valuable property thereon, willfully, intentionally, and fraudulently failed to properly mix the concrete and construct the piers in compliance with its contract, and knew the piers were unsafe and insufficient, so that when plaintiff attempted to use them one of them collapsed and injured plaintiff's property, defendant was liable to plaintiff for the damages sustained; defendant's duty being one imposed by law, irrespective of contract.

    [Ed. Note.—For other cases, see Torts, Dec. Dig. § 11.\*]

2. **NEGLIGENCE (§ 55\*)—CONSTRUCTION OF STRUCTURES—LIABILITY TO SUBCONTRACTORS.**

    Where defendant, a subcontractor for concrete piers of a bridge, so negligently constructed the same, with knowledge that plaintiff, an independent subcontractor for the iron work, would necessarily place heavy valuable material and tools thereon, that one of them disintegrated and fell, causing damage to plaintiff's material and tools, and the defects in the piers were not known to plaintiff and could not have been ascertained by careful inspection, and defendant knew of the unsafe condition, defendant was liable for the injuries sustained, though there was no contractual relation between plaintiff and defendant.

    [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 68; Dec. Dig. § 55.\*]

Action by the Pennsylvania Steel Company against the Elmore & Hamilton Contracting Company. On demurrer to plaintiff's complaint to recover damages for injury to property. Overruled.

Battle & Marshall, for plaintiff.

Edgar T. Brackett, for defendant.

RAY, District Judge. The ground of demurrer is that the declaration of the plaintiff does not state a cause of action upon which the plaintiff can recover.

The complaint concludes, "By reason of the premises the plaintiff has sustained damages in the sum of $20,000," and then demands judgment for that sum and for costs and disbursements.

Without going into detail, a summary of the complaint is as follows:

(1) The plaintiff is a Pennsylvania corporation, and the defendant is a New York corporation.

(2) Prior to December 16, 1908, the defendant, the Elmore & Hamilton Company, entered into a contract with the Washington & Berkeley Bridge Company, a West Virginia corporation, which corporation prior to said date had commenced the erection and construction of a bridge over the Potomac river from Maryland to West Virginia at or

\*For other cases see same topic & § NUMBER in Dec & Am. Digs. 1907 to date, & Rep'r Indexes

near Williamsport, state of Maryland. The defendant, by its agreement, undertook and agreed, for a consideration, to construct certain concrete piers for such bridge to be used for the support of the superstructure of such bridge when placed thereon. This superstructure was to be of steel and this fact was known to defendant, as was the weight of such superstructure. Prior to December 16, 1908, the plaintiff, the Pennsylvania Steel Company, commenced the erection of the said steel superstructure upon such piers under a contract between the plaintiff and the Washington & Berkeley Bridge Company. That is, the Washington & Berkeley Bridge Company was erecting the bridge, including concrete piers and steel superstructure, and contracted with the defendant company to erect and construct the concrete piers and contracted with the plaintiff company to construct and erect or place on such piers the steel superstructure. The latter erection, of course, was to follow the first. The defendant company knew of defendant's contract and knew what weight the piers were to support.

(3) The defendant knew plaintiff was to put the said superstructure on the piers, and that it was to use valuable and numerous materials, tools, machinery, etc., in so doing.

(4) That it was the duty of the defendant to use reasonable care to employ competent and skilled workmen, to use suitable and proper material and machinery in mixing and placing such concrete and properly mix the concrete complying with the specifications in so doing, so as to give reasonable support to the superstructure and insure reasonable safety to the same and to the tools, etc., to be used thereon and therewith in the erection of such superstructure.

(5) That defendant, its officers, agents, and employés, in violation of the said duties, "intentionally, willfully, maliciously, negligently, and fraudulently mixed the concrete used in pier No. 10 and intentionally, willfully, maliciously, negligently, and fraudulently set and constructed said concrete after the same had been mixed, and failed to use the ordinary and usual machinery which should have been used for the proper mixing of the concrete, and in various other ways intentionally, willfully, maliciously, negligently, and fraudulently constructed said pier No. 10, and then delivered same to the said Washington & Berkeley Bridge Company a short while before they knew same was to be used for sustaining and supporting the superstructure, tools, machinery, and materials which plaintiff was about to place thereon." This allegation is intended to be that pier 10 was delivered a short time prior to the time it was to be used for supporting the superstructure, and that defendant knew it was to be used for that purpose very soon, not that it was delivered before defendant knew it was to be used to support such superstructure.

(6) That pier No. 10 was "improperly, fraudulently, willfully, and carelessly made and constructed by the defendant, and same was rotten, weak, and wholly insufficient to support the weight" to be put thereon by plaintiff, "as the defendant well knew and believed."

(7) That defendant then turned over the piers to said Washington & Berkeley Company and represented that it was complete and sufficient to bear the said load and weight intended, etc., and "invited the

plaintiff, its officers, agents, and employés, to place such superstructure, materials, tools, etc., thereon.

(8) That none of such defects were open or visible, but all were such as could not be observed or discovered by the use of ordinary care on the part of the plaintiff. That plaintiff and its officers and agents were wholly ignorant of such defects.

(9) That pursuant to such·invitation and representations, etc., the plaintiff put tools, etc., on said piers and commenced the erection and placing of such superstructure thereon when, on said 16th day of December, 1908, the said pier No. 10, "owing to the aforesaid negligence and fraud of the defendant," and while plaintiff was at work thereon, crumbled away and disintegrated, and the superstructure, materials, and tools, etc., were precipitated to the ground, a distance of some 45 feet, and such superstructure, tools, etc., were totally destroyed.

The main contention of the defendant is that there were no contractual relations between the plaintiff and the defendant companies, that defendant owed no duty to the plaintiff growing out of such a relation, that the action or complaint is for negligence and to recover damages for negligence, and that the action cannot be maintained.

The complaint says that; "owing to the aforesaid negligence and fraud of the defendant," the piers crumbled away and disintegrated, and the superstructure and tools fell and were destroyed. The damage is not charged up to "the negligence" alone, but to the "aforesaid negligence and fraud." The fair meaning and construction of the pleading is that the damage and injury resulted directly from the ·acts and conduct .of the defendant, improper mixing of the concrete, etc., so the piers were rotten and weak, contrary to the specifications, and then turning such piers over ·with assurances that they were all right, and that that would constitute a fraud on the Washington & Berkeley Bridge Company.

In one aspect, and allowing the words "intentionally, willfully, and maliciously," as descriptive of the nature and character of defendant's acts, to determine the nature of the action, it is an action for a willful tort and wrong, and the complaint states a good cause of action. Allowing the use of the word "negligently," as descriptive of the nature and character of defendant's acts of omission and commission, to determine the nature of the action, as one of willful tort and wrong, or as one of negligence pure and simple, and we have a complaint in an action of negligence, and then we are to consider whether, in such a case, it is necessary for the .complaint to allege or show contractual relations or privity of contract between the plaintiff and defendant.

In the first aspect mentioned, we have a case where a contractor intentionally, willfully, maliciously, and fraudulently does an act, that is, intentionally violates his contract for the purpose of defrauding the ·owner or one with whom he contracts, makes a dangerous structure, knowing the use to which it is to be put, one dangerous to persons and ·property thereon, which is designed for people to go upon and place heavy loads and valuable property upon, and then turns it over for such use with assurances that it is all right and safe and according to contract. It falls when put to its intended use and damage to the

property of third persons, rightfully there, follows. Can there be any doubt of the existence of a right to recover damages? Not if Kuelling v. Lean Manufacturing Co., 183 N. Y. 78, 83, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691, or Devlin v. Smith, 89 N. Y. 470, 477, 42 Am. Rep. 311, or Torgesen v. Schultz, 192 N. Y. 156, 159, 84 N. E. 956, 18 L. R. A. (N. S.) 726, 12 Am. St. Rep. 894, or Heaven v. Pender, L. R. (11 Q. B. D.) 503, or Riggs v. Standard Oil Co. (C. C.) 130 Fed. 199, or Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, is good law.

I think all these cases good law and determinative of the sufficiency of this complaint. In fact, I think, that disregarding the word "negligently" we have a charge of willful and intended injury to property. The complaint in effect says the piers were intentionally, willfully, and maliciously constructed in a rotten and unsafe condition, the maker well knowing persons were to go thereon, some 45 feet from the ground, and take valuable property with them for use there. But one result in the natural course of things could follow. The natural and probable consequence of the act and consequence reasonably to be apprehended was injury to property and perhaps to person. Then why is it not a case of willful injury to property? Suppose a person knowingly and willfully constructs a dangerous bridge upon which he knows his neighbor is liable to drive and has the right to drive, and does it maliciously. He then assures his neighbor that it is safe, and the neighbor drives upon it with his team. The bridge goes down, and the man is injured and his team killed or drowned. Can there be any question that the neighbor may recover for both injuries to person and injuries to property?

It seems clear to me that, under the circumstances described, while there is no actual contractual relation or contractual obligation between the one who erects the dangerous part of a structure and third persons who are to use it and add to it, and who are within the contemplation of the contractors as the users thereof in completing the entire structure, the first-mentioned party owes a duty to the second-mentioned party to at least construct it according to his contract, and even if he does so construct it and knows it to be unsafe to go upon, that he then owes a duty to the prospective users known to him to inform them of such dangers. It is extremely technical to hold that one who knowingly constructs a dangerous thing and turns it over to the owner to be placed in the hands of a third person known to such maker to be used by such third person in a way which will probably and naturally result in injury owes no duty to such third person. Under the authorities cited, there seems to be no question that the third person in such a case suffering personal injuries would have a remedy in an action for damages. Is there any good reason why he should not have a remedy by an action for damages for injury to his property when such damages are the known and natural and probable consequence of the act? In Heaven v. Pender, supra, the principle of law stated was, and this is approved by the Court of Appeals in Torgesen v. Schultz, supra:

"Any one who leaves a dangerous instrument, as a gun, in such a way as to cause danger, or who without due warning supplies to others for use an in-

strument or thing which to his knowledge, from its construction or otherwise, is in such a condition as to cause danger, not necessarily incident to the use of such an instrument or thing, is liable for injury caused to others by reason of his negligent act."

This statement of the principle does not confine liability to damages to the person. The liability arises, not out of a breach of contractual relations, and the duty is not one imposed by contract, but is a duty imposed by law, irrespective of contractual relations between the parties.

That the right of action in such cases is not confined to the recovery of damages for injury to the person is shown by the decision in Wellington v. Downer Kerosene Oil Company, 104 Mass. 64, cited and approved in Kuelling v. Lean Mfg. Co., 183 N. Y. 87, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691. In Wellington v. Downer, etc., supra, the complaint alleged and claimed damages to both person and property, and a verdict was directed for the defendant. Judge Gray, later Mr. Justice Gray of the Supreme Court of the United States, gave the opinion of the court on appeal, and said:

"It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other who is not himself in fault."

He then cited cases, and continued:

"The second count of the declaration expressly avers that the defendants sold naphtha to Chase for the purpose of being retailed and resold to be burned in a lamp for illuminating purposes, knowing it to be explosive and dangerous to life when so used, and knowing Chase's business to be that of a retailer and his purpose to retail and resell the same to the public to be so used; that Chase resold a part thereof to the plaintiff to be so used, and, while he was so using it, it ignited and exploded, and injured his person and property; and that both Chase and the plaintiff were ignorant of its dangerous qualities. Proof of the facts thus alleged would show that the defendants were guilty of a violation of duty in selling an article which they knew to be explosive and dangerous, for the purpose of being resold in the market, without giving information of its nature, and were therefore bound to contemplate, as a natural and probable consequence of their unlawful act, that it might explode or ignite, and injure an innocent purchaser or his property, and to answer in damages for such a consequence if it should come to pass. The ruling of the learned judge who presided at the trial was therefore erroneous, and the exceptions must be sustained."

In my judgment it is immaterial that the dangerous thing made and turned over for use by others known to the maker is a structure, such as piers for a bridge, instead of some article of commerce such as naphtha, or a drug, or a chemical compound. This is shown by the decisions in Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311; Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387, commented on in Devlin v. Smith, supra, pages 478, 479 of 89 N. Y. (42 Am. Rep. 311), where it is stated that the principle is the same whether or not the dangerous structure is on the premises of the defendant.

Now consider the case as an action to recover damages for negligence: In Devlin v. Smith et al., supra, our J. T. S. contracted to paint the dome of a courthouse. He contracted with J. S., the defend-

ant, to erect the necessary scaffolding which was to be first class, and J. S. did erect it; but through the negligence of J. S. it was so negligently and defectively constructed that, when people went upon it to paint the dome, it fell, and plaintiff's intestate, one D., a painter, rightfully thereon, was injured and died. The plaintiff's intestate was employed by J. T. S., who had the contract to paint the dome, and who had caused the scaffolding to be erected by employing an experienced and competent man, J. S., to construct it. It was held that J. T. S., who employed the plaintiff's intestate and sent him upon the scaffold, and whose duty it was to provide the scaffolding, was not liable, as he was not negligent, but that J. S., who negligently erected the scaffold, was liable to the representatives of D., the painter, who lost his life by reason of such negligence. There was no contractual relation whatever between J. S. and the plaintiff's intestate, but J. S. knew the purpose for which the scaffold was to be used, and it was held that he owed to those who were to use it the duty, imposed by law (not by contract), to use ordinary care to make it reasonably safe and suitable for the purpose for which it was to be used, and that for his negligence he was liable to plaintiff's intestate. The opinion was given by Rapallo, J., one of the ablest jurists ever on the bench, and he said:

"As a general rule the builder of a structure for another party, under a contract with him, or one who sells an article of his own manufacture, is not liable to an action by a third party who uses the same with the consent of the owner or purchaser, for injuries resulting from a defect therein, caused by negligence. The liability of the builder or manufacturer for such defects is, in general, only to the person with whom he contracted. But, notwithstanding this rule, liability to third parties has been held to exist when the defect is such as to render the article in itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use. As where a dealer in drugs carelessly labeled a deadly poison as a harmless medicine, it was held that he was liable not merely to the person to whom he sold it, but to the person who ultimately used it, though it had passed through many hands. This liability was held to rest, not upon any contract or direct privity between him and the party injured, but upon the duty which the law imposes on every one to avoid acts in their nature dangerous to the lives of others. Thomas v. Winchester, 6 N. Y. 397 [57 Am. Dec. 455]. In that case Mayor, etc., v. Cunliff, 2 N. Y. 165, was cited as an authority for the position that a builder is liable only to the party for whom he builds. Some of the examples there put by way of illustration were commented upon, and, among others, the case of one who builds a carriage carelessly and of defective materials, and sells it, and the purchaser lends it to a friend, and the carriage, by reason of its original defect, breaks down and the friend is injured, and the question is put: Can he recover against the maker? The comments of Ruggles, C. J., upon this supposititious case, in Thomas v. Winchester, and the ground upon which he answers the question in the negative, show clearly the distinction between the two classes of cases. He says that in the case supposed the obligation of the maker to build faithfully arises only out of his contract with the purchaser. The public have nothing to do with it. Misfortune to third persons not parties to the contract would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life.

"Applying these tests to the question now before us, the solution is not difficult. Stevenson undertook to build a scaffold 90 feet in height, for the express purpose of enabling the workmen of Smith to stand upon it to paint the interior of the dome. Any defect or negligence in its construction, which should cause it to give way, would naturally result in these men being precipitated from that great height. A stronger case where misfortune to third

persons not parties to the contract would be a natural and necessary consequence of the builder's negligence can hardly be supposed, nor is it easy to imagine a more apt illustration of a case where such negligence would be an act imminently dangerous to human life. These circumstances seem to us to bring the case fairly within the principle of Thomas v. Winchester."

In Lechman v. Hooper, 52 N. J. Law, 253, 19 Atl. 215, Furman & Kite contracted to put up an engine house and employed McKenzie to put in the lintels to the door, who sent Lechman, the plaintiff, to do that work. Furman & Kite had contracted with defendant, Hooper, to put up the walls, and he had done the work in such a negligent manner that they were unsafe. There was no contractual relation whatever between Lechman, the plaintiff, and Hooper, the defendant. While plaintiff was putting in the lintels, the defective and negligently constructed wall fell, and the plaintiff was injured. Held, he could recover of Hooper the damages sustained. The court said:

"The wall that fell and injured the plaintiff had been built by the defendant, and, as the jury has found, had been left by him in a dangerous condition. Being conscious of that fact, he had directed one of his men to prop it up in the usual manner—an order that had not been adequately obeyed, and hence the accident.

"The verdict acquits the plaintiff of all negligence on his part.

"The only connection between the plaintiff and defendant was that they were engaged in doing work on the same structure, by force of independent contracts with the builder; the defendant having undertaken to do the mason work, and the master of the plaintiff to do the iron work. The plaintiff had been sent by his employer to put in the lintels to the door of the building in question, and, while assisting in raising a derrick for that purpose, had been hurt by the falling of the wall already mentioned. * * *

"The legal situation was this: The defendant had erected this wall, and, therefore, the law imposed on him the duty to put it in a safe condition, or to give warning of its unsafe condition, and this was a duty he owed to each individual person who should lawfully come upon the premises."

It is true that in some of the cases, as in the scaffold cases, the dangerous structure was erected for the express purpose of going upon, while here the dangerous piers were erected to support and carry the steel superstructure which was to be erected thereon by the plaintiff. But it was well known to the defendant, the complaint alleges, that the plaintiff's agents must go upon such piers, at a great height, with men, material, and tools, to erect and place the superstructure; hence defendant well knew that in the natural course of things the natural, probable, and necessary consequence of its willful negligence and violation of contract with the Washington & Berkeley Bridge Company would be injury to the property of the plaintiff and the persons of its servants and employés. The complaint also alleges that the defendant turned it over as safe and properly constructed and invited the plaintiff to go thereon with men, tools, etc., knowing the defective and unsafe condition of such piers. Therefore we have a case where the defendant company was negligent in the construction of these piers, and the negligence made them unsafe for persons to go upon with tools and materials such as defendant knew the piers were designed to support and were to be used to support; where the immediate result of the negligence was known to the defendant, viz., the dangerous condition of the piers; where the defendant knew the plaintiff's men and material were to go thereon in adding the superstructure and

completing the bridge; where the natural, necessary, and probable consequences of the negligence were injury to such persons and property; where such injury followed; where the dangerous defects of construction were not known to the plaintiff and could not be ascertained by careful inspection; and where the structure was represented by the defendant to be safe and plaintiff was not negligent. The complaint states a good cause of action in either aspect; that is, as one to recover damages for a willful tort or wrong, or as an action to recover damages for negligence. Devlin v. Smith, 89 N. Y. 470, 477, 478, 42 Am. Rep. 311; Torgesen v. Schultz, 192 N. Y. 156, 159, 84 N. E. 956, 18 L. R. A. (N. S.) 726, 12 Am. St. Rep. 894; Kuelling v. Lean Manufacturing Co., 183 N. Y. 78, 88, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691; Heaven v. Pender, L. R. (11 Q. B. Div.) 503; Wellington v. Downer K. O. Co., 104 Mass. 64, 67, 68; Riggs v. Standard Oil Co. (C. C.) 130 Fed. 199; Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455; Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 605, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 432; Lewis v. Terry, 111 Cal. 39, 43 Pac. 398, 31 L. R. A. 220, 52 Am. St. Rep. 146; Woodward v. Miller, 119 Ga. 618, 46 S. E. 847, 64 L. R. A. 932, 100 Am. St. Rep. 188; Lechman v. Hooper, 52 N. J. Law, 253, 19 Atl. 215; Derry v. Flitner, 118 Mass. 131; O'Neill v. James, 138 Mich. 567, 101 N. W. 828, 68 L. R. A. 342, 110 Am. St. Rep. 321.

No motion has been made to separate the causes of action, and the complaint stands as did the complaint in Kuelling v. Lean Mfg. Co., 183 N. Y. 78, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691, where the allegation was that in constructing the roller "the defendant intentionally, willfully, maliciously, negligently, and fraudulently" put into it, etc.

The demurrer is overruled, with costs. On payment of costs within 30 days, defendant may answer.