Joseph SOAVE et al.

v.

NATIONAL VELOUR CORPORATION
et al.

No. 2003–557–Appeal.

Supreme Court of Rhode Island.

Dec. 14, 2004.

Stephen P. Cooney, for Plaintiff.

Warren D. Hutchison, Boston, MA, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This matter came before this Court for oral argument on October 5, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time.

### Facts and Procedural History

The plaintiffs, Joseph and Evelyn Soave [1] (collectively plaintiff), appeal from a Superior Court entry of summary judgment in favor of defendant, Alhambra Building Co., Inc. (Alhambra). The plaintiff contends that the trial justice erred in determining that defendant, a building contractor, did not owe a duty of care to plaintiff. The plaintiff asserts that a question of material fact existed that precluded summary judgment. For the reasons stated herein, we deny the appeal and affirm the judgment of the trial justice.

In September 1997, National Velour Corp. (National Velour), a Rhode Island Corporation with a principal place of business in Warwick, Rhode Island, engaged David I. Grist AIA Architect Inc. and David I. Grist & Associates Architects (collectively Grist) for a renovation project on National Velour's property. Grist's scope of work included the design of a parking lot, retaining wall, and loading dock. National Velour thereafter hired Alhambra as the general contractor for the renovation project. The parties do not dispute that Alhambra constructed the retaining wall in accordance with the plans and specifications prepared and provided by Grist and relinquished control of the completed project to National Velour prior to the events pertinent to this appeal.

On July 13, 1998, Joseph Soave sustained an injury to his knee when he fell from the retaining wall. He thereafter commenced a civil action against National Velour, Grist, and Alhambra, alleging that his injuries were proximately caused by

---

1. Evelyn Soave is the wife of Joseph Soave. She has filed a loss of consortium claim as a consequence of the injury suffered by her husband.

the lack of a guardrail along the top of the retaining wall. Alhambra moved for summary judgment on the ground that it could not be held liable for plaintiff's injuries because it had followed the plans and specifications provided by Grist, which did not call for a guardrail. Because it had adhered to those plans, Alhambra maintained that it owed no duty of care to plaintiff.

Before the motion justice, defense counsel argued that a contractor who follows the plans and specifications of an owner or the owner's architect should not be held responsible for damages resulting solely from defective plans in the absence of negligence by the contractor. The plaintiff, on the other hand, argued that the absence of the guardrail in both the plans and the completed structure constituted a defect so patently dangerous that defendant knew or should have known that injury would result. To support its position, plaintiff submitted the affidavit of civil engineer Donald Dusenberry, who stated that the design and construction of the wall without a guardrail violated the Rhode Island State Building Code and that plaintiff's injury was foreseeable at the time of the design and construction of the retaining wall.

The trial justice granted summary judgment to defendant, concluding that defendant owed no duty to plaintiff under the circumstances presented in this case and that the expert's affidavit raised no genuine issue of material fact concerning defendant's negligence. We agree.

### Standard of Review

▮▮▮ "This Court reviews a grant of summary judgment on a *de novo* basis." *Johnson v. Newport County Chapter for Retarded Citizens, Inc.,* 799 A.2d 289, 291 (R.I.2002) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). "Accordingly, if our review of

the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the trial justice's granting of summary judgment." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996)). "The nonmoving party, however, must present evidence that a disputed material fact exists and cannot prevail by simply relying on allegations or denials in the pleadings." *Id.* (citing *Heflin v. Koszela,* 774 A.2d 25, 29 (R.I.2001)).

### Analysis and Discussion

#### I

#### Alhambra's Duty of Care

▮▮▮ In Rhode Island, to state a viable claim for negligence, the complainant must allege facts showing the existence of a legal duty of care owed by defendant to plaintiff. *Ferreira v. Strack,* 636 A.2d 682, 685 (R.I.1994). Whether such a duty of care runs from a defendant to a plaintiff is a question of law for the court to decide. *Hennessey v. Pyne,* 694 A.2d 691, 697 (R.I. 1997). If the court concludes that no duty exists, "then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Ferreira,* 636 A.2d at 685 (quoting *Barratt v. Burlingham,* 492 A.2d 1219, 1222 (R.I.1985)).

This case, therefore, first requires us to analyze the duty of care owed to third parties by a general contractor who has: (1) fully adhered to plans and specifications provided by an architect or engineer; and (2) relinquished control of the completed project to the owner. On this point, the hearing justice found that "a construction contractor, who has followed plans and specifications provided by the owner or the owner's architect or engineer, will not be responsible for loss or damages that result

solely from the defective plans or specifications in the absence of negligence by the contractor or an expressed warranty that his work is free from defects," adding that "the [c]ourt believes this is the better rule, and that a contractor should be able to rely on the specialized expertise of architects or consulting engineers, when it comes to matters such as conformity to building codes or other matters requiring specialized knowledge." We agree with the hearing justice's decision and the ultimate result in this case. Because this is a case of first impression in this jurisdiction, however, a survey of the historical journey of this issue is helpful.

Various jurisdictions have addressed the issue of contractor liability. The famous English case of *Winterbottom v. Wright,* 152 Eng. Rep. 402 (Q.B. 1842), first held that a building contractor would not be liable for injury to third persons after the contractors work had been completed and accepted by the property owner. Speiser et al., *The American Law of Torts* § 15:116 at 844–46 (1987). *See also Daugherty v. Herzog,* 145 Ind. 255, 44 N.E. 457 (1896), *abrogated by Peters v. Forster,* 804 N.E.2d 736, 742 (Ind.2004) (holding that "a builder or contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and acceptance by the owner, where it was reasonably foreseeable that a third party would be injured by such work due to the contractor's negligence"); *Curtain v. Somerset,* 140 Pa. 70, 21 A. 244 (1891). Over time, this principle, criticized as "overbroad on laissez faire doctrines," Speiser § 15:116 at 846, was slowly eroded by American courts, which considered it incompatible with both legal theory and contemporary societal mores favoring liability for negligence. *Id.* The rule holding contractors liable in a quasi-fraud sense for turning over work with knowledge of its

defective and/or dangerous quality was one of the first incursions. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* 104A at 722 & n. 17 (5th ed. 1984) (citing *Pennsylvania Steel Co. v. Elmore & Hamilton Contracting Co.,* 175 F. 176 (D.N.Y.1909)). Thereafter, some courts began to recognize liability whenever a contractor turned over a product or instrumentality knowing of its "imminent" or "inherent" danger. *Id.* at 723 n. 19 (citing *McCloud v. Leavitt Corp.,* 79 F.Supp. 286 (E.D.Ill.1948); *Johnston v. Long,* 56 Cal. App.2d 834, 133 P.2d 409 (1943); *Cox v. Ray M. Lee, Co.,* 100 Ga.App. 333, 111 S.E.2d 246 (1959); *Holland Furnace Co. v. Nauracaj,* 105 Ind.App. 574, 14 N.E.2d 339 (1938); *Foley v. Pittsburg–Des Moines Co.,* 363 Pa. 1, 68 A.2d 517 (1949)).

Notwithstanding its gradual disappearance, a minority of states has adhered to the *Winterbottom* rule to absolve builders and contractors of negligence liability. The Supreme Court of Mississippi took such an approach in *Trustees of the First Baptist Church of Corinth v. McElroy,* 223 Miss. 327, 78 So.2d 138 (1955). In that case, defendant building company contracted to build a large church in accordance with plans and specifications provided by an architect and subject to approval of the architect and general superintendent. *Id.* at 139. The builder completed the job and the architect and superintendent both inspected and approved the work. *Id.* Nearly two years later, the chimney flue exploded and caused considerable damage to the church. *Id.* The church then sued the contractor, alleging that its negligence caused the explosion and subsequent damage. *Id.* The court held that:

"[A] construction contractor who has followed plans and specifications furnished by the contractee, his architect or engineer, and which have proved to be defec-

tive or insufficient, will not be responsible to the contractee for loss or damage which results solely from the defective or insufficient plans or specifications, in the absence of negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects." *Id.* at 141.

The court thereafter found that there was no proof that the builder had been negligent because he had followed the plans and specifications provided to him without deviation. *Id.* In other words, under Mississippi law, a contractor is free from liability even in the face of a final product which may be inherently or imminently dangerous. This holding has been echoed on several occasions. *See Southland Enterprises, Inc. v. Newton County,* 838 So.2d 286, 290 (Miss.2003); *accord Barnthouse v. California Steel Buildings Co.,* 215 Cal.App.2d 72, 29 Cal.Rptr. 835 (1963); *Black v. Peter Kiewit Sons' Co.,* 94 Idaho 755, 497 P.2d 1056 (1972); *Gast v. Shell Oil Co.,* 819 S.W.2d 367 (Mo.1991); *Rogers v. Frank C. Mitchell Co.,* 908 S.W.2d 387 (Mo.Ct.App.1995).

In 1916, the New York Court of Appeals rendered a monumental decision in *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050, 1053 (1916), holding that liability of a manufacturer for injuries caused by a defectively constructed automobile, if danger was to be reasonably expected therefrom, attached without regard to whether the danger was considered to be inherent or imminent. Spurred on by that decision, most jurisdictions jettisoned the *Winterbottom* "acceptance" rule in favor of the "almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done." W. Page Keeton, 104A at 723. Nevertheless, courts have carved out ex-

ceptions to this modern rule, one of which is central to the matter now before this Court. That exception holds that a contractor will not be held liable for injuries to a third person when the contractor has "merely implemented the owners plans and specifications without any discretion and without any negligence, unless they are so obviously dangerous that no competent contractor would follow them." Emmanuel S. Tipon, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring after Completion and Acceptance of Work; "Foreseeability" or "Modern" Rule,* 75 A.L.R.5th 413 § 13 at 487 (2000).

The seminal case from which this exception emerged is *Ryan v. Feeney and Sheehan Building Co.,* 239 N.Y. 43, 145 N.E. 321 (1924), in which the New York Court of Appeals upheld a verdict absolving a defendant contractor from liability under circumstances similar to those presented in this case. In *Ryan,* the defendant building company erected a building and canopy in accordance with plans and specifications furnished by the United States government and its architects. *Id.* at 321. The canopy subsequently collapsed, causing injury to a third person. *Id.* The court determined that there was nothing to show that the "plans and specifications were so obviously defective that a contractor of average skill and ordinary prudence would not have attempted the construction according to the plans." *Id.* at 322. The court observed that to impose liability on the builder, defects in the plan should be "so glaring and out of the ordinary as to bring home to the contractor that it was [constructing] something which would be likely to cause injury." *Id. See also Romano v. Rossano Construction Co.,* 341 Mass. 718, 171 N.E.2d 853 (1961); *Gee v. City of New York,* 304 A.D.2d 615, 758

N.Y.S.2d 157 (2003); *Loconti v. Creede,* 169 A.D.2d 900, 564 N.Y.S.2d 823 (1991); *Pioli v. Town of Kirkwood,* 117 A.D.2d 954, 499 N.Y.S.2d 266 (1986).

In *Hunt v. Blasius,* 74 Ill.2d 203, 23 Ill.Dec. 574, 384 N.E.2d 368 (1979), the Supreme Court of Illinois restated the *Ryan* rule, holding that a contractor who carefully carries out the specifications provided to him is justified in relying upon the adequacy of the plans "unless they are so obviously dangerous that no competent contractor would follow them." *Id.* at 371. Upholding a summary judgment in favor of the contractor, the court found no evidence that the builder "should have been put on notice that the product would be dangerous and likely to cause injury" or "from which a court might infer that the specifications were so glaringly dangerous that [the builder] should have refrained from complying with the specifications." *Id.*

Alabama has also adopted the *Ryan* rule, holding that an independent contractor owes no duty to third persons to judge the plans, specifications or instructions that he has merely agreed to follow. In *Nickolson v. Alabama Trailer Co.,* 791 So.2d 926, 929 (Ala.2000), Alabama's highest court held that " '[i]f [a] contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them.' " *See also Ross v. State,* 704 N.E.2d 141, 145 (Ind.Ct.App.1998) ("where a contractor is not following his or her own plans for the work, but those provided by the contrac-

tee, liability is imposed only where the plans are so obviously defective that no reasonable contractor would follow them"); *Contractors of Engineering and Manufacturing of Oklahoma, Inc. v. Williams Automatic Sprinkler Co.,* 527 P.2d 325 (Okla. 1974) (adopting the principle that a contractor entrusted with work is usually entitled to assume that plans and specifications will make a project safe, unless the plans are so obviously capable of presenting an imminent and certain danger of injury that a prudent contractor would recognize and foresee the danger).

■ We have reviewed the preceding cases and deem their reasoning legally sound with due regard for public policy. In light of the persuasive authority from around the country, we likewise hold that a contractor who builds in accordance with the plans and specifications provided by an architect or engineer and, as in this case, in reliance on a valid building permit, and who thereafter turns over the work product to the owner should not be held liable to third parties for personal injury allegedly caused by the structure or instrumentality unless the plans are so obviously dangerous that no competent contractor would follow them. We believe that this is in harmony with the prevailing standard around the nation.[2]

We are of the opinion that to hold otherwise would inequitably burden construction companies who build in reliance on architectural plans and validly issued building permits. We see little, if any, connection between the conduct of a builder who faithfully adheres to architectural plans and an injury suffered by a third party as a result of a deficiency in those

---

**2.** For a listing of other states that have adopted this rule *see* Emmanuel S. Tipon, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring* *after Completion and Acceptance of Work;* "*Foreseeability*" *or* "*Modern*" *Rule,* 75 A.L.R.5th 413 § 13 at 487–91 (2000) and 74 A.L.R.5th 523 § 10 at 574–80 (1999) and cases cited therein.

plans, unless the deficiency itself presents a danger so obvious that no competent contractor would build in compliance with those plans. In addition, builders and contractors are justified in relying upon the experience and skill of architects and engineers. Imposing liability in such circumstances would place contractors in a position in which they would adhere to architectural plans at their own risk, effectively forcing them to both insure the correctness of the specifications provided to them and continually question the issuance of building permits.

Applying the rule to the facts of this case, it is without dispute that Alhambra constructed the retaining wall on National Velour's property in compliance with the architectural plan and designs prepared by the architects. None included a guardrail along the retaining wall. It is also clear from the record that the work was commenced after a valid building permit was issued. Moreover, the record indicates that following completion of the project, the building inspector conducted a final examination of the construction and issued a final certificate of occupancy.[3]

## II

### Obvious Danger

■■■■ Because both parties stipulated that Alhambra constructed the wall in accordance with the plans and specifications provided by Grist and that Alhambra had no part in the design or engineering of those architectural plans, plaintiff was required to show the existence of a genuine issue of material fact as to whether Grist's plans were so obviously defective that no competent contractor would have followed them in order to avoid summary disposi-

tion. It is the general rule in Rhode Island that a party opposing summary judgment has an affirmative duty to set forth, by affidavit or otherwise, specific facts that show a genuine issue of material fact. *Mills v. Toselli,* 819 A.2d 202, 205 (R.I. 2003); *Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I.1998). However, "conclusory assertions in an affidavit filed in opposition to a motion for summary judgment are inadequate to establish the existence of a genuine issue of material fact and therefore do not afford a basis for reversal of a trial justice's ruling granting a motion for summary judgment." *Roitman & Son, Inc. v. Crausman,* 121 R.I. 958, 959, 401 A.2d 58, 59 (1979) (mem.). In this case, the only evidence plaintiff offered in response to defendant's motion for summary judgment was the affidavit of a civil engineer, Donald Dusenberry. Dusenberry's affidavit offers several general opinions, none of which is relevant to the pertinent issues in this case. Moreover, the document is conclusory and fails to set forth any facts from which a jury could find on the issues vital to plaintiff's case, namely, whether the lack of a guardrail on the retaining wall presented an obvious danger such that no competent contractor would have followed the building plans. Dusenberry's affidavit, therefore, did not present a genuine issue of material fact concerning Alhambra's liability. In addition, as the motion justice succinctly stated, "Mr. Dusenberry's opinion that the need for a guardrail was 'forseeable' [could] not establish a duty. Only the court can determine what constitutes a duty as a matter of law."

In urging that we reverse the hearing justice, the plaintiff calls our attention to the Indiana Supreme Court's 1996 decision in *Blake v. Calumet Construction Corp.,*

---

3. In his affidavit, David I. Grist said under oath that "upon completion and final inspection the building inspector did not require a railing when issuing the building permit or the final certificate of occupancy."

674 N.E.2d 167, 173 (Ind.1996), in which that court found that the absence of a guardrail on a construction project in itself created an adequate issue of material fact as to whether the project was left in an inherently or imminently dangerous condition. In that case, however, the evidence presented at trial indicated that the contractor had deviated from the architectural plans by failing to install the guardrail. *Blake*, 674 N.E.2d at 169. In addition, there was a question of fact as to whether the contractor had completed the project and turned it over to the property owner at the time of the plaintiff's injury. Id. at 170–72. Here, there is no question that the defendant built the retaining wall in accordance with the plans and specifications that the architect provided. It is also beyond dispute that Alhambra had completed its work and had fully relinquished control of the project to National Velour at the time of the plaintiff's fall. Accordingly, we reject the contention that reasoning in *Blake* has any application to this case.[4]

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

---

4. The holding in *Blake v. Calumet Construction Corp.*, 674 N.E.2d 167 (Ind.1996) was recently abrogated by the Indiana Supreme Court in *Peters v. Forster*, 804 N.E.2d 736, 742 (Ind.2004), where the court discarded Indiana's long-held "acceptance" rule in favor of a more liberal forseeability standard, which it deemed more "consistent with traditional principles of negligence upon which Indiana's scheme of negligence law is based." In both *Blake* and *Peters*, however, the court specifically reaffirmed the rule that we have herein adopted. *Peters*, 804 N.E.2d at 742 ("a contractor's liability * * * is * * * predicated upon negligence * * *. Thus for example, there is no breach of duty and consequently no negligence where a contractor merely follows the plans or specifications given him by the owner so long as they are not so obviously dangerous or defective that no reasonable contractor would follow them"); *Blake*, 674 N.E.2d at 173 n. 9 ("[c]ontractors are not liable to third parties merely for carrying out plans or directions, so long as the plans are not so obviously dangerous or defective that no reasonable contractor would follow them").