## TRUSTEES OF THE FIRST BAPTIST CHURCH OF CORINTH, MISS. *v.* McELROY.

No. 39488 February 28, 1955 78 So. 2d 138

*Wm. S. Lawson,* Tupelo, for appellant.

*James E. Price, Cary Stovall,* Corinth, for appellee.

GILLESPIE, J.

Appellant desired to build a large church and employed an architect of national reputation who prepared the plans and specifications. Appellee entered into a contract for the plumbing and heating, including the installation of a designated type steam generator for heating the building and a certain designated type hot water heater. The contract provided that all work, material and installation was to be in accordance with plans and specifications of said church as prepared by the

architect, and subject to the approval of the architect and general superintendent.

Appellee performed the contract in accordance with the plans and specifications, and the job was inspected by the supervising architect as the work progressed. After completion, the architect, general superintendent, building committee and a representative of the factory that manufactured the steam generator, all inspected the installation and approved and accepted appellee's work as done in accordance with the contract. No contention to the contrary is made.

Nearly two years after completion of the church, and several months after the steam generator had been converted from oil to natural gas, the chimney flue exploded, causing considerable damage to the church. Appellee had nothing to do with the building of the chimney, which was designed to carry out the fumes from the steam generator and the hot water heater. This chimney was some distance from the place where the steam generator and hot water heater were installed. The vent was connected to the breeching of the steam generator, and ran about fifteen feet or more to the chimney flue. The vent from the hot water heater was interconnected with the vent running from the steam generator to the chimney.

On the day the explosion occurred, a repairman, not connected with appellee, was called to repair the furnace because the burner was running continuously and the pop-off valve was activated because the boiler was overheated. The steam generator was completely automatic. It developed that a spring within the automatic valve had broken. The repairman failed to observe an indicator that would have revealed to him that the spring was broken. He shut off the gas from the steam generator by turning the manual valve. The burner was then off and no gas could enter the generator burner. After running the fan blower, the repairman opened the

manual valve with the pilot light off. A two inch stream of gas began running into the steam generator. The burner was off. Then the repairman turned on the starter which automatically started the furnace after the fan ran a period of twelve to twenty seconds, followed by the spark that ignited the pilot. The unburned gas had passed through the burner into the vents and thence into the chimney. When the automatic mechanism caused the pilot to become ignited, the explosion took place. The force of the explosion was in the chimney, which was blown open from top to bottom.

Appellants sued appellee in tort, alleging that the proximate cause of the explosion and resulting damage to the church was the negligent manner in which the vents were interconnected running from the breeching of the steam generator to the chimney; that since the steam generator had a forced draft burner whereby air was blown into the burner for proper combustion of the gas and thus forcing the fumes through the vents into the chimney and out the top, and the hot water heater was a natural draft burner, that they should not have been interconnected; that a proper installation required that the vent from the steam generator and the vent from the hot water heater be connected to the chimney independently; that to connect the two vents together was dangerous in that fumes and unburned gas from the forced draft steam generator would tend to collect in the water heater vent. It was also claimed that the angles of the connecting vents were not proper and were calculated to trap fumes and any unburned gas that might escape. It was further contended that the escape of unburned gas was a foreseeable contingency that the installing contractor should guard against by properly constructing the vents of the two appliances.

Appellant's proof was to the effect that the installation of the vents as set out above was dangerous and not good practice, and would constitute a hazard to the

proper operation of the venting system, and that an improper venting system would cause raw gas to accumulate or hang in the chimney. The proof showed that the two vents from the two appliances were interconnected as alleged. Appellant introduced a booklet prepared by the American Gas Association wherein it is stated that the two vents should not be interconnected. Appellee's proof showed that the interconnection of the vents and the angles used in installing the two appliances were common practice and were not dangerous. The proof was uncontradicted that unburned natural gas rises. Other charges of negligence were made with which we are not concerned on this appeal.

■■ ■ It seems to us that the proximate cause of the explosion and resulting damage to the church was the negligence of the repairman in turning on the automatic starter of the furnace, when he should have observed that the automatic valve was open due to the broken spring, and that if there was any improper venting system installed, it was a remote, and not the immediate, cause of the explosion. However, for the purposes of this decision, we will assume, but not decide, that (1) the venting system installed by appellee was improper, and (2) was a proximate contributing cause of the explosion. This concession disposes of the second proposition contended by appellant.

The appellant's first and only other proposition is that a contractor who installs a dangerous instrumentality is liable for the consequences of any negligence in its installation which proximately causes or contributes to injury to others, notwithstanding the fact that he followed the plans and specifications of an architect.

Appellant relies on three cases: American Heating and Plumbing Company v. Grimes, et al, 192 Miss. 125, 4 So. 2d 890; Mississippi Power & Light Company v. Thomas, 206 Miss. 201, 39 So. 2d 759; Mississippi Public

Service Company v. Cunningham, 189 Miss. 179, 195 So. 472.

The Thomas and Cunningham cases involved facts so different from those here involved that no discussion of those cases is justified. The Grimes case laid down the rule as to the knowledge charged by law to one who, for a valuable consideration, installs a dangerous instrumentality (gas heater), and the duty to use that degree of care commensurate with the danger. Following that rule, as a corollary thereof, the Court in that case held that there was a duty to forewarn the owner so that the danger could be removed or remedied. █ Then appeared the following statement in the opinion in the Grimes case:

"It may be that an exception is to be made in what is said in the next foregoing paragraph, namely, that if the danger created by the other contractor is known to the owner and is well understood by him as one obviously likely to produce harm and so much so that a warning to him would have been but an idle ceremony and of no service to the owner, then the failure to warn may be excluded as a proximate or contributing cause; . . ."

The next foregoing quotation is obviously a dictum, but we think it sound and is applicable to the case now under consideration. If the vents installed by appellee were dangerous, that fact was as well known to the architect, the agent and representative of the owner, as it was to appellee.

In the Grimes' case, the appellant's foreman was asked by the owner's superintendent the direct question whether the proximity of the heater to combustible material did not make it dangerous, and appellant's foreman assured the superintendent that the installation was entirely safe. However, we think the results would have been the same in that case if the question had not been asked and answered as stated. We have examined the original record in the Grimes' case, and it is revealed

that the appellant there was under a written contract to install the gas heater as set forth in the opinion. However, although the owner had an architect employed, the installing contractor, the appellant, American Heating and Plumbing Company, was required by the contract to furnish the shop drawing for the plumbing and heating and was made responsible for errors of any sort in the shop drawings or schedules. The installing contractor was required to use his judgment. The Grimes' case did not come within the rule governing this case, as hereinafter set forth.

■■■ The rule has become well settled, in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results solely from the defective or insufficient plans or specifications, in the absence of negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects. See Anno., 88 A. L. R. 797, et seq.; Havard v. Board of Supervisors, (Miss.) 70 So. 2d 875. We have been cited to no case, and we are unable to find one, where this rule has not been followed, except those making a distinction between completed and uncompleted work—a factor not present here. It should be noted that the text of the rule limits its application to the parties to the contract.

If any dangerous condition existed in connection with the vents installed by appellee, it resulted from plans and specifications prepared by appellant's architect, and which appellee was required to follow by the terms of the contract. Some of the cases ground the rule on assumption of risk by the owner, or contractee. The majority of the cases base it on an implied warranty by the owner that the plans or specifications are suitable

for the particular purpose coupled with an absence of express warranty by the contractor in regard to the sufficiency of the plans or specifications.

"In MacKnight Flintic Stone Co. v. New York (1899), 160 N. Y. 72, 54 N. E. 661, it was said: 'If there was an implied warranty of sufficiency, it was made by the party who prepared the plan and specifications, because they were its work; and, in calling for proposals to produce a specified result by following them, it may fairly be said to have warranted them adequate to produce that result. If I agree to produce a certain result according to my own plan, I impliedly warrant its sufficiency; but if I agree to produce that result by strictly following the plan prepared by another party, he impliedly warrants its sufficiency. The responsibility rests upon the party who fathers the plan and presents it to the other with the implied representation that it is adequate for the purpose to be accomplished.' "

There is no proof that appellee was negligent in doing what he did do—follow the plan and specifications. Nor was there any contention made that appellee expressly warranted the sufficiency of the plan and specifications. The contract contained no such warranty.

Appellant urges that the rule just discussed applies to general contractors, but has no application to specialists such as installing contractors of dangerous instrumentalities. We have been cited to no case where such limitation has been placed on the rule, and we see no reason why, under the facts of this case, we should limit the rule. A different rule would apply if the owner had made a contract with appellee whereby appellee was to make the installation and use his own plan of vents. Then there would arise an implied warranty of the sufficiency of the plan; and the case of American Heating and Plumbing Company v. Grimes, et al, supra, would be applicable.

We hold that the learned circuit judge correctly granted the peremptory instruction requested by appellee when the defense rested his case.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle,* and *Holmes, JJ.,* concur.