406 So.2d 15 (1981)
MASSEY-FERGUSON, INC., and Massey-Ferguson Credit Corporation
v.
Bernie EVANS.
No. 52865.
Supreme Court of Mississippi.
October 7, 1981.
*16 Powell & Thrash, Roy D. Powell, Jackson, for appellants.
Zuccaro, Riley, Pintard, Brown & Carby, J. Walter Brown, Jr., Natchez, for appellee.
Before ROBERTSON, P.J., and WALKER and LEE, JJ.
WALKER, Justice, for the Court:
This is an appeal from the Chancery Court of Wilkinson County involving two cases consolidated by the Court for the purpose of trial. The first case was on bill of complaint of Massey-Ferguson Credit Corporation against Bernie Evans to recover a deficiency judgment on three installment contracts covering agriculture equipment purchased by Bernie Evans from Massey-Ferguson, Inc. of Yazoo City. The second case was by Evans against Massey-Ferguson, Inc. for damages, both actual and consequential, arising from defects in the equipment purchased and breach of express and implied warranties.
The three installment contracts sued on by Massey-Ferguson Credit Corporation involved a new Massey-Ferguson grain drill, a used Massey-Ferguson combine, a water tank and trailer and a used disc harrow.
In the suit by Massey-Ferguson Credit Corporation against Evans, the chancellor awarded a deficiency judgment in the amount of $732.03 resulting from the repossession and sale of the water tank and trailer and disc harrow but did not award a deficiency judgment arising out of the repossession and sale of the grain drill or combine for reasons hereinafter discussed.
In the case of Bernie Evans v. Massey-Ferguson, Inc., the court awarded a judgment to Evans for $9,989.11 resulting from *17 a breach of express and implied warranties with respect to said equipment.
The chancellor found that because of the two appellants' similarity of interest, characterized by their interlocking directorates, Massey-Ferguson Credit Corporation was not a holder in due course and that Evans was entitled to raise any defenses against Massey-Ferguson Credit Corporation that he could have raised against the original seller, Massey-Ferguson, Inc.
We have carefully and meticulously considered the record in this case and are of the opinion that neither the grain drill nor the combine were in operable condition when they were delivered to Evans and were never thereafter put in operating condition during the time that Mr. Evans had possession of the equipment. The chancellor's finding in this regard was not only supported by the record but was eminently correct.
In view of the chancellor's finding, it goes without argument that Massey-Ferguson breached its new equipment warranty that the equipment would be free of defects in material and workmanship at time of delivery to Evans, the first retail purchaser. We are of the opinion that there was also a breach of the implied warranty of merchantability found in Mississippi Code Annotated section 75-2-314(2)(c) (Supp. 1980) in that neither the grain drill nor the combine were fit for the ordinary purpose for which such goods are used.
We are of the further opinion that there was a breach of the implied warranty as provided for in Mississippi Code Annotated section 75-2-315 (Supp. 1980) which states:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.
With regard to the last warranty, ordinarily referred to as "Fitness for particular purpose," Massey-Ferguson's salesman, John Warren, who was called as a witness for Massey-Ferguson, testified that he knew Bernie Evans had never farmed before and that Evans intended to use the equipment purchased to farm 200 acres in Wilkinson County. Mr. Warren further testified that he explained to Mr. Evans all that he knew about farming and assisted Mr. Evans in selecting the equipment that he would need in his farming operation. He testified that he assured Mr. Evans the combine would be in "field ready" condition and would be ready to cut soybeans. The evidence is clearly to the effect, along with reasonable inferences to be drawn from it, that Mr. Evans relied on Mr. Warren's skill and judgment to select suitable equipment for Evans' soybean operation. Although Massey-Ferguson attempted to repair the equipment, it failed to ever place the machinery in operating condition. Thus, Massey-Ferguson's liability to Evans for breach of warranty was clearly established.
A warranty by a seller that goods will be repaired or replaced if found to be in defective condition implicitly provides that the seller has the capability of making such repairs or replacement within a reasonable time. This capability means that the seller has reasonably available personnel qualified to make the repairs and that any parts necessary for such repairs are readily available.
The appellants contend that the written contract, i.e., the purchase orders and the express limited warranties which are attached to this opinion as Exhibit "A", limited the buyer's remedy to repair or replacement of the new machinery at the option of the seller, and which provided that the used equipment was sold "as is without warranty of any character, express or implied, unless buyer has received from seller a separate written warranty executed by seller," and which further provided "that in no event shall the owner be entitled to recover for incidental or consequential damages, ... other commercial losses, inconvenience or cost of rental or replacement equipment."
*18 In this regard, the appellants contend, citing much authority, that the trial court erroneously allowed oral testimony that at the time of the parties' negotiation for the equipment and at the time the sale was consummated, the seller assured Mr. Evans that the equipment would be delivered in "field ready condition." Appellants argue that this violates the rule against allowing oral testimony to change the terms of a written contract. However, this argument overlooks the fact that the new grain drill was covered by the Massey-Ferguson new agricultural equipment warranty which warrants new agriculture equipment to be free of defects in material and workmanship at time of delivery to the first retail purchaser. We are of the opinion and so hold that such a warranty encompasses the proposition that the equipment would be in "field ready" condition. "Field ready" condition simply means that the equipment is ready to be used in the field and is consistent with Massey-Ferguson's warranty that the machinery is free of defects in material and workmanship at the time of delivery.
Massey-Ferguson's argument with respect to the contract as it relates to the used equipment, i.e., that it was purchased on an "as is" and "where is" basis without any warranty, express or implied, must also fail because of two statutory enactments. First, Mississippi Code Annotated section 75-2-719(4) (Supp. 1980) provides that:
Any limitation of remedies which would deprive the buyer of a remedy to which he may be entitled for breach of an implied warranty of merchantability or fitness for a particular purpose shall be prohibited.
And, Mississippi Code Annotated section 11-7-18 (Supp. 1980) which further emphasizes this prohibition states:
There shall be no limitation of remedies or disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose.
In Mississippi, implied warranties are governed by Mississippi Code Annotated section 75-2-314 (Supp. 1980) and reads, in part, as follows:
(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as
... .
(c) are fit for the ordinary purposes for which such goods are used; and
... .
(3) Other implied warranties may arise from course of dealing or usage of trade.
The evidence in this case clearly established that the combine was not reasonably operable when it was delivered to the buyer, Mr. Evans, and was not fit for the ordinary purposes for which a combine is used and was not put in reasonably operable condition after the seller, Massey-Ferguson, became aware of its many defects. In fact, Evans had to borrow a combine to harvest most of his soybeans. In short, the combine was not merchantable.
A breach of warranty having been clearly established, Evans was entitled to allowable damages. A buyer's damages for breach in regard to accepted goods is controlled by Mississippi Code Annotated section 75-2-714 (1972) which provides:
(1) Where the buyer has accepted goods and given notification ... he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under section 75-2-715 *19 may be recovered. (Emphasis added).
And Mississippi Code Annotated section 75-2-715 (1972) states:
(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty. (Emphasis added).
In the case sub judice, since the seller, Massey-Ferguson, Inc., and the financing corporation, Massey-Ferguson Credit Corporation, are deemed to be one and the same because of their interlocking directorates, it was improper for the chancellor to allow, as a part of Evans' damages, the difference between the value of the goods accepted and the value they would have had if they had been as warranted, because this would amount to a windfall or unjust enrichment since he only had invested in the grain drill and combine a down payment of $1,510.54. Therefore, his damages with respect to the value of the equipment should have been limited to $1,510.54 instead of $5,189.11 as allowed by the court.
The appellants strongly argue that Massey-Ferguson's damages with respect to the new grain drill was limited by the written warranty to either repair or replacement of any defects, at the option of the seller. However, as in Ford Motor Company v. Fairley, 398 So.2d 216 (1981), such limitation of damages as allowed under section 75-2-719 presupposes that the warrantor has fulfilled his warranty. In this case it (Massey-Ferguson) failed to either repair or replace the defective equipment and, therefore breached its warranty. Under these circumstances, the buyer's remedies are governed by section 75-2-714 and section 75-2-715(2)(a) as above quoted.
The appellants argue that the chancellor erred in allowing consequential damages in the form of crop loss because it would be purely speculative and conjectural. We do not think the chancellor erred in this regard.
Section 75-2-715(2)(a) defines consequential damages as follows: "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise... ." This section has been interpreted to allow a plaintiff to recover lost profits if the seller has reason to know at the time of contracting that if he breached the contract, the plaintiff would be deprived of those profits. The subsection also imposes two restrictions in addition to foreseeability. The damages must be reasonably ascertainable and the plaintiff cannot recover from losses he reasonably could have prevented. J. Wight and S. Summers, Handbook of the Law Under the Uniform Commercial Code (2nd ed. 1980). The authors conclude their discussion of section 2-715 as follows:
To sum up what we have said about consequential damages, 2-715(2) codifies the more liberal reading of Hadley v. Baxendale. Most of the courts have recognized that a seller is liable for all damages resulting from his breach if they arise from circumstances that the seller knew about or had reason to know about, even if he did not consciously assume the risk of such liability. The plaintiff can recover lost profits if the seller had reason to know at the time of contracting that if he breached the contract the plaintiff would be deprived of those profits. But subsection (2) imposes two restrictions on the recovery of consequential damages in addition to the foreseeability requirement: they must be reasonably *20 ascertainable, and the plaintiff cannot recover for losses he reasonably could have prevented. While damages for injuries to person and property may be recovered under 2-715(2)(b) even if they were not foreseeable, the requirement that injuries proximately result from a breach of warranty probably embraces the mitigation restriction.
Section 2-715(2) is remarkably brief in light of its impact; whether or not consequential damages are allowed can mean the difference between a fifty-cent and a million-dollar damages award. For example, if a defective fifty-cent bolt snaps, it may cause the deaths of thirty children riding a school bus or the break-down for several months of a giant generator needed to operate a factory. The consequential damages provisions provide the only Code remedy that can come close to fully compensating plaintiffs in these cases. Because of the brevity and significance of 2-715, it is important to remember that it draws on over a century of common law development, which began with Hadley v. Baxendale. (pp. 396-397).
In this case, the seller could easily foresee at the time of contracting that undesirable consequences would follow if Evans could not timely plant his soybean corp. He also reasonably should have known that the delivery of the drill, unassembled, and the ineffective repairs would cause such a delay in the planting. It was undisputed at trial that Evans made every effort to mitigate his damages as required. He bought a manual slinger, attempted to repair the machinery, and borrowed a neighbor's grain drill to complete his planting.
The chancellor awarded Evans consequential damages for the losses he was unable to mitigate. This amount ($4,800) represents the difference between Evans' investment and the recoupment from the sale of the soybeans. He was not awarded damages for his labor, nor for the normal crop yield in the area.
For the above reasons, we conclude that the chancellor was correct in awarding Evans the consequential damages that resulted from the seller's breach of its express warranty to repair or replace the grain drill.
The final issue raised by appellants concern the chancellor's finding that Massey-Ferguson Credit Corporation was not a holder in due course because the two corporations had interlocking directorships. We find that this determination by the chancellor was correct. It is well established that transactions by corporations with interlocking directorates will be given close scrutiny by the courts. 19 C.J.S. Corporations § 787 (1940); Guntharp v. Planters Oil Mill, 358 So.2d 397 (Miss. 1978); Bentz v. Vardaman Mfg. Co., 210 So.2d 35 (Miss. 1968). The chancellor found the Credit Corporation did not meet the requirement that a holder in due course must take "in good faith," and "without notice ... of any defenses or claims on the part of any person." Miss. Code Ann. § 75-3-302 (1972). We cannot say from a review of the record that this determination was in error.
Therefore, for the reasons expressed in this opinion, the chancellor's award to Bernie Evans for actual damages in the amount of $9,989.11 is reversed and reduced to $1,510.54. The chancellor's award of consequential damages of $4,800.00 resulting from crop loss is affirmed. The judgment entered in the lower court is modified accordingly, and a total judgment in the sum of $6,310.54 is rendered here in favor of Bernie Evans against Massey-Ferguson, Inc.
AFFIRMED AS MODIFIED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
*21 
*22 
*23