445 So.2d 791 (1984)
Robert B. WRIGHT, Jr., d/b/a Snapco Pools, Appellant,
v.
Ronald A. STEVENS and Sharon L. Stevens, Appellees.
No. 53941.
Supreme Court of Mississippi.
January 4, 1984.
*792 Russell D. Thompson, Ocean Springs, for appellant.
William H. Myers, Gordon, Myers & Gordon, Pascagoula, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case arises out of a contract to build a swimming pool in the Plaintiffs Stevens' backyard in Ocean Springs, Mississippi. The contractor failed timely to complete the work. The Stevens hired a new contractor to complete the job and brought suit against the original contractor to recover all damages over and above that which they had originally contracted to pay.
A petit jury of the Circuit Court of Jackson County returned a verdict in favor of the homeowner Stevens. We affirm on liability although, for the reasons explained below, we must reduce the damage award.

II.

A.
Robert B. Wright, Jr., Defendant below and Appellant here, does business as a swimming pool contractor under the trade name of Snapco Pools, and is hereinafter referred to as "Wright". Ronald A. Stevens and Sharon L. Stevens, Plaintiffs below and Appellees here, own a residence in Ocean Springs, Mississippi. The Plaintiffs Stevens are hereinafter collectively referred to as "Stevens" or "the Stevenses".
On June 1, 1980, Wright and Stevens entered into a swimming pool contract. For a consideration of $10,750 to be paid as the work progressed, Wright obligated himself to construct a swimming pool in the Stevens' backyard. Wright agreed that he would complete the swimming pool "in a substantial and workmanlike manner according to accepted trade practices". Wright warranted "all materials, equipment and workmanship for a period of two years".
The contract called for completion of the swimming pool within sixty (60) days, to-wit:
The contractor is responsible for completion within a reasonable time period herein stated to be sixty (60) days.
The same paragraph of the contract further provided that:
The contractor shall not be responsible for damage or delay due to inclement weather, civil disturbances, acts of God, or other causes beyond his control.
The essence of the contract was that Wright would construct on the Stevens' premises a completed, usable and serviceable swimming pool and that he would do so in a timely and workmanlike manner, beginning June 1, 1980.
The topography of the Stevens' backyard was unusual. Much of the area where the swimming pool was to be located consisted of a severe slope which dropped approximately one foot for every horizontal foot. Wright had inspected the premises before entering into the swimming pool construction contract.
*793 Upon signing the contract on June 1, Stevens paid Wright $1,000.00. For two and a half weeks, Wright was not heard from. Then Wright called and asked for a $3,000.00 payment so he could pay for the pool sides. Stevens gave Wright this amount, and on June 23 or June 24, Wright delivered the pool sides to the Stevens' backyard. Wright then disappeared for another eight to ten days.
Shortly after the first of July, Wright returned to the site with a bulldozer and backhoe and began to dig. In due course, Wright asked Stevens for the $6,000.00 that was to become due when the site was excavated and all materials were present. Stevens objected, claiming that excavation was not complete nor were all materials present. Wright, however, convinced Stevens to part with $3,000.00, with the agreement that Stevens would pay the remaining $3,000.00 when the rest of the materials were brought to the site.
About a week later, Wright brought most of the pool accessories listed in the contract onto the premises. At this time Stevens paid Wright an additional $2400.00. The $600 was withheld because Wright had not yet acquired the Polaris vacuum sweep. The $2400.00 check in hand, Wright disappeared again.
On July 23, 1980, Stevens contacted Wright to find out when the pool was going to be completed. Wright assured him that the August 1 deadline would be met. Again nothing happened. On July 29, 1980, Stevens addressed a letter to Wright advising that it was apparent that the August 1 deadline would not be met and that the parties should negotiate an extension of time for the completion of the contract. Wright did not respond.
On August 1, 1980, Stevens posted the property. A controversial telephone conversation occurred between Stevens and Wright wherein Wright claims that Stevens declared the contract terminated. Stevens denied this. Thereafter Wright acknowledges that there was an agreement for an "undefined continuation" between the parties whereunder Wright was to return to the premises and "complete the work".
At this point the lawyers for the parties got into the act. One issue was that Stevens had still not paid the final $600 of the sums due when excavation had been completed and all materials had been delivered to the job site. Stevens had continued to withhold payment because the Polaris vacuum sweep still had not been delivered. The parties negotiated an agreement under which the disputed $600 was placed in escrow to be paid to Wright upon delivery of the vacuum. The agreement was consummated when Wright delivered the vacuum to the Stevens' home on August 13, 1980.
Wright returned to the premises on August 20 and worked for approximately one hour and a half. He then disappeared not to be heard from again until after Stevens had filed suit, his declaration being lodged with the Circuit Clerk of Jackson County on October 6, 1980.
In late October, Stevens negotiated with two other swimming pool contractors, William R. Boyd and Fred Hinckel, for the completion of the swimming pool. Boyd ultimately contracted with Stevens for this completion work. When Stevens made his contract with Boyd, it had been 65 days since Wright had been heard from.
Boyd testified that when he arrived at the site it appeared as though approximately one-third of the labor on the pool had been completed and that 40 to 50 percent of the necessary materials were on the site. Hinckel testified that when he saw the job site in October of 1980 the pool was 20 to 25 percent complete.
As Wright abandoned the project, the sides of the pool were standing in "bare air". The cement had been poured for the bottom of the pool. Still, the sides of the pool were threatening to come loose from the base and one actually did before the pool was completed. Stevens' primary incentive for hiring a new contractor was the threat of the pool rolling down the hill into a bayou that bordered the back of his property.
*794 Boyd completed the swimming pool on November 5, 1980. The costs of completion are:

 Completed swimming pool
 construction $5,250.00
 Repair damage to pool 190.00
 Additional dirt 1,524.25
 Spreading dirt, packing, bringing
 to grade, sodding 1,621.00
 Labor and materials in retaining
 wall 1,340.00
 __________
 $9,925.25

In fact, the retaining wall was installed some two months later when it appeared as though the dirt was going to wash away.

B.
On October 6, 1980, Stevens commenced this action by filing his declaration in the Circuit Court of Jackson County. He charged breach of contract as well as a so-called tortious failure to perform.
Stevens demanded $10,000.00 as actual damages necessary to complete the swimming pool construction project and $3,000.00 for destruction of their property and for loss of use and enjoyment of the pool. Stevens also demanded punitive damages.
The trial judge submitted to the jury on a single theory, breach of contract. The punitive damages portion of the declaration was stricken and correctly so, reducing the damages demanded in Stevens' pleadings to $13,000.00. The jury thereupon on August 13, 1981, returned a verdict in favor of Stevens and against Wright and assessed Stevens' damages at $15,000.00, denominated in the verdict as "actual damages".
In due course Wright filed the usual plethora of post-trial motions. The trial judge reduced the verdict to $13,000 to conform to the ad damnum in Stevens' pleadings; otherwise, the motions were overruled. This appeal has followed.

III.

A. Breach of Contract Liability

1.
Wright argues that the verdict was contrary to the evidence and accordingly should be vacated. From a study of Wright's brief it is not clear whether Wright is arguing that judgment should have been rendered in his favor, notwithstanding the verdict of the jury or merely that because the verdict was against the overwhelming weight of the evidence the case should be remanded for a new trial.
We do not hold that Wright was guilty of substantial breach of contract, subjecting him to liability in damages, for failure to complete the contract within sixty (60) days. The contract did not provide that time was of the essence. Under such circumstances the mere fact that there has been a delay in completion will not justify the project owner in terminating a construction contract or in rescinding it. Bevis Construction Co. v. Kittrell, 243 Miss. 549, 560, 139 So.2d 375 (1962).
Of the essence of Wright's contractual undertaking was that he would perform with reasonable dispatch, commencing June 1, 1980. Stevens' termination of the contract occurred on October 6, 1980, the day Stevens filed suit. The question before the jury was whether Wright's failure to complete the job with the 127 days between June 1 and October 6 constituted a breach of Wright's contractual obligation to perform his contract within a reasonable time.
There was substantial testimony before the jury that under no circumstances should it take more than 30 days to construct such a swimming pool. The pool in fact was completed in less than 20 working days  the time Wright spent on the job added to the number of days Boyd spent completing the work. Contrary to Wright's claim of excessive rainfall and heat is Stevens' wholly credible proof that there were only two days during June and July when inclement weather would have prevented work. The jury was well within its prerogatives in rejecting as unreasonable Wright's claims of shipping delays and commitments to other jobs.
At trial, Wright charged that Stevens had been guilty of breach of contract. In *795 addition to his inclement weather, shipping delay and other commitments defenses, Wright sought to prove that Stevens had been guilty of a material breach of contract by posting the property on August 1 and by failure to pay timely $600 of the amounts due upon completion of excavation and delivery of materials to the job site. These issues were presented to the jury on minimally adequate instructions.
Our review of the record makes it clear that the question of who breached the contract was fairly presented to the jury on conflicting evidence. The jury found that Wright had breached the contract and that Stevens had not. No legally viable reason for disturbing that verdict has been presented. Suffice it to say that under our system, it is the jury that resolves such issues, not this Court.

2.
At trial, Wright requested jury instruction No. D-8 which reads as follows:
The Court instructs the jury that in determining what your verdict shall be in this case, you must go into the jury room and first discuss and resolve the question of breach of contract before you have any other or further deliberations; and, if you (sic) decide from the evidence and other instructions given by the Court that the Defendant is not guilty of a breach of contract caused by his own fault, that caused actual monetary damages, if any, complained of by the Plaintiffs, then under your oaths, you must return a verdict for the Defendant, Robert B. Wright, Jr., dba Snapco Pools, without ever discussing or considering the question of damages, if any, sustained by the Plaintiffs.
The trial court refused the requested instruction. Wright assigns this refusal as error.
Wright charges that the denial of this instruction "denied the jury consideration of whether there was a breach of contract or not by the appellant/defendant". Wright further argues that the denial of this instruction precluded the jury's considering that Wright's delay in completing the contract may have been caused by inclement weather, or by homeowners' act in posting the premises or making an alleged late payment.
Upon our review of the matter, we hold that the refusal of jury Instruction No. D-8 was correct on at least two grounds.
First, we do not consider rejected jury instructions in a vacuum. That the rejected instruction may state a sound principle of law  which this one does not  does not mean its refusal was error. Rather, we look at all the instructions given. We consider the court's total charge to the jury. If the point encompassed by the rejected instruction was fairly included in other instructions given the jury, reversal is not required. Hickombottom v. State, 409 So.2d 1337, 1339 (Miss. 1982); Knight v. State, 57 So.2d 161 (Miss. 1952); Norman v. State, 385 So.2d 1298 (Miss. 1980).
Jury Instruction No. 5 required that the jury find that Wright breached the contract by failing "to construct a swimming pool according to the written contract" before a jury verdict for Stevens could be returned. Jury Instruction No. P-6 required, as a predicate for a verdict for Stevens, that the jury find that Wright "breached the contract by failure to complete the swimming pool". Jury Instruction No. D-11A then advised the jury that there would be no breach by Wright if the jury found that Wright's non-performance.
"was caused directly or indirectly by the action or inaction on the part of the plaintiffs which interfered with the performance of the defendant for fulfillment of the contract... ."
Taken as a whole, these instructions present the question of breach of contract to the jury, although to be candid, we cannot say that they are more than minimally adequate. What is clear, however, is that the rejected instruction, Jury Instruction No. D-8 would have added nothing. Relatively speaking, Instruction No. D-11A was more adequate in presenting Wright's defense than was the rejected instruction *796 D-8. If Wright had before us an artfully drawn instruction setting forth his theory on the breach issue, we might have a different matter.
Instruction No. D-8 contains an erroneous statement of law. It would have advised the jury that it could only find against Wright if it found that Snapco was "guilty of a breach of contract caused by its own fault, ..." [Emphasis added]. If by the word "fault" the instruction intended to articulate a standard of conduct, failure of compliance with which plus causation would yield liability, the instruction contains a redundancy. In contract law breach is "legal fault", the only legal fault. On the other hand, if by "fault" Wright intended an additional standard, it is superfluous and therefore irrelevant. The only thing the jury had to find to return a verdict against Wright was that Wright was guilty of a breach of contract, and quite clearly the jury did so find.

B. Damages

1.
The damages issue in this case is far more troublesome.
Once Wright's breach was established, Stevens became entitled to recover a sum sufficient to complete construction of the swimming pool in accordance with the contract. Bevis Construction Co., Inc. v. Kittrell, 243 Miss. 549, 560, 139 So.2d 375 (1962). Stevens was entitled to the swimming pool he bargained for. It was his right that the completed swimming pool cost him no more than the original contract price of $10,750. He was entitled to recover of and from Wright all sums reasonably expended and necessary to the completion of construction of the swimming pool he had originally bargained for.
As explained above Stevens had paid Wright the sum of $10,000. At trial they proved the following additional expenditures:

 Mr. Boyd, pool contractor $5,250.00
 Mr. Jeremiah (dirt) 1,524.25
 Repairs to the pool 190.00
 For packing dirt $1,621.00
 Cost of retaining wall 1,340.00
 _________
 Total $9,925.25

Wright challenges the reasonableness of much of this expense. He particularly objects to the cost of the retaining wall being charged to him, saying he had no plans to use a retaining wall. The argument misses the point. The essence of Wright's contract was that he would provide the Stevens with a serviceable, usable swimming pool. This meant a swimming pool that would be safe and secure in the particular topographical configuration presented by the Stevens' lot, a lot which we might add, Wright had inspected before he executed the contract. The evidence was substantial that the retaining wall was necessary to produce a lasting and serviceable swimming pool. That Wright had hoped to get by with less is beside the point.
Whether the retaining wall was necessary to give Stevens what he had bargained to receive from Wright was a jury issue which, on conflicting evidence and inferences, was resolved in favor of Stevens. Indeed, the essence of the jury's finding on damages is that all of the expenses listed above were reasonably necessary in order to provide Stevens with a sturdy and serviceable swimming pool, that which Wright had contracturally bound himself to produce.
Accordingly, the Stevens are entitled to recover damages as follows:

 Amount paid to Wright $10,000.00
 Amount of additional expenditures
 necessary to produce serviceable
 and sturdy swimming pool 9,925.25
 __________
 $19,925.25
 Minus contract price 10,750.00
 __________
 NET DAMAGES DUE STEVENS $ 9,175.25

So much of the jury verdict as awards damages in favor of the Stevens and against Wright in the amount of $9,175.25 is therefore affirmed.

2.
Our problem is that the jury returned a verdict which read as follows: "We the jury find for the Plaintiffs and *797 assess their damages at $15,000.00." Because in their declaration Plaintiffs had sought only $13,000.00 in actual damages, the Circuit Court correctly ordered a remittitur of $2,000.00. Final judgment was thereafter entered in favor of the Stevens and against Wright in the sum of $13,000.00. We hold that so much of the damage award as exceeded $9,175.25 must be vacated.
First, Stevens only sought $10,000 "as damages for breach of contract". As explained above, he only proved breach of contract damages in the amount of $9,175.25.
In addition, Stevens included in his complaint a loosely worded tort count. No tort theory of recovery, however, was submitted to the jury, nor was any such instruction requested. The essence of the theory of the case for both parties at the time it was submitted to the jury is that each was treating the case solely as an action for breach of contract. Whatever tort notions the Stevens may have had at the time of the filing of their declaration had obviously been abandoned. They in no way requested that such theories be submitted to the jury. The damages recoverable by Stevens are, accordingly, limited to those allowable under our law in cases of breach of contract.
In his declaration Stevens sought $3,000.00 in damages "for the destruction and damage to their property and for the loss of use of the pool in question". At trial the jury was instructed that Stevens' damages should be
such amount of damages as will completely compensate them reasonably for all detriment suffered by them, and of which the Defendant's [Wright's] conduct proximately caused. In arriving at the amount of the award, you shall compensate them reasonably for all expenses and economic losses resulting therefrom, if any, suffered by them, as a proximate result of the conduct in question.
Our question is whether as a matter of law Stevens was entitled under the facts of this case to recover damages over and above $9,175.25.
Consideration of this point of law in every Anglo-American jurisdiction begins with Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Rep. 145 (1854). Under Hadley the damages recoverable for breach of contract were:
such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.[1]
The Uniform Commercial Code, as enacted in Mississippi, codifies a liberal reading of Hadley v. Baxendale. Massey-Ferguson, Inc. v. Evans, 406 So.2d 15, 19 (Miss. 1981). Though this is not a UCC case, the code forms an instructive analogy. The code allows recovery of such consequential damages which include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know. Miss. Code Ann. § 75-2-715(2)(a) (1972); Massey-Ferguson, Inc. v. Evans, supra, 406 So.2d at 19-20.
In the Massey-Ferguson, Inc. v. Evans case the plaintiff sought consequential damages for breach of a contractual obligation to provide certain farm equipment free of defects in material and workmanship. Evans had incurred expenses incident to a soybean crop which he was not able to recoup from sale. He proved that this loss resulted from the seller's breach of contract.
*798 The accepted modern statement of the rule is found in Restatement, Contracts 2d (1979).
§ 351. Unforeseeability and Related Limitations on Damages
(1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
(2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
(a) in the ordinary course of events, or
(b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.
(3) A court may limit damages for forseeable loss by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation.
§ 352. Uncertainty as a Limitation on Damages
Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.
On the authority of this line of cases from Hadley v. Baxendale down through Massey-Ferguson, Inc. v. Evans and the Restatement of Contracts 2d we hold that, where a contract to construct a swimming pool has been only partly performed, the owner may recover of and from the defaulting contractor any losses resulting from general or particular requirements and needs which the contractor at the time of contracting had reason to foresee as a probable result of the breach. Such damages must be measurable in monetary terms and must be reasonably certain. They may not be established by speculation or conjecture.
Seen in this light, Stevens certainly had the legal opportunity to prove damages over and above the $9,175.25. Remembering that we are concerned with a jury verdict which we may not disturb if it is supported by substantial evidence, we nevertheless hold as a matter of law that Stevens has failed to establish with reasonable certainty any damages over and above $9,175.25. See Johnson v. Flammia, 169 Conn. 491, 363 A.2d 1048, 1054 (1975).
AFFIRMED IN PART; REVERSED IN PART.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The rule of Hadley v. Baxendale was construed and applied restrictively for the first half century of its existence, largely under the influence of Holmes, The Common Law 236-237 (Howe Ed. 1963). See Kerr S.S. Co., Inc. v. Radio Corporation of America, 245 N.Y. 284, 157 N.E. 140 (1927) (Cardozo, C.J.); and Gilmore, The Death of Contract, 50-53 (1972). The rule is more liberal today on both sides of the world. See, e.g., The Heron II, 3 All.E.R. 686 (House of Lords 1967); and Skagway City School Board v. Davis, 543 P.2d 218 (Alaska 1975).