# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00838-SCT

*SOUTHLAND ENTERPRISES, INC.*

*v.*

*NEWTON COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/7/2000 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | G. MARTIN WARREN, JR. |
| | CHRISTIAN BLUE WADDELL |
| ATTORNEY FOR APPELLEE: | DANNY K. CLEARMAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 02/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     Southland Enterprises, Inc. sued Newton County, Mississippi, demanding payment of $84,800.98 for work it performed on the Chunky-Duffee Road. The complaint also demanded statutory interest pursuant to Miss. Code Ann. § 31-7-305 (2000) and reasonable attorney's fees pursuant to § 31-7-309.

¶2.     At the conclusion of the trial, the jury returned a verdict in favor of Southland in the amount of $21,697.24. Final judgment was entered on that verdict, and the trial court denied Southland's motion to

amend the final judgment to include statutory interest and attorney's fees. On appeal, Southland raises two issues:

> **I.     DID THE TRIAL COURT ERR IN REFUSING TO GIVE JURY INSTRUCTION P-12?**
>
> **II.    DID THE TRIAL COURT ERR IN REFUSING TO AMEND THE FINAL JUDGMENT TO INCLUDE STATUTORY INTEREST AND ATTORNEY'S FEES?**

## FACTS

¶3.     On November 29, 1999, Southland entered into a contract with Newton County to resurface approximately seven miles of the Chunky-Duffee Road. The bid on the contract was $68,661.42. The contract specified that the road work, including the leveling, chipping, and sealing of the road, was to be completed by December 30, 1999, according to the 1998 Mississippi Standard Specifications for State Aid Road and Bridge Construction, 1989 edition (State Aid Specifications).

¶4.     During December 1999, Southland leveled the road and applied the sealant and stone. Shortly after completion of the road, it became apparent that the stone did not adhere to portions of the road where tires traveled. At the same time of the Chunky-Duffee Road work, Newton County employees also applied sealant and stone on a paving project on the Providence Road, a road which intersects the Chunky-Duffee Road. Unlike the stone applied by Southland, the stone put down by the county employees did adhere to the road.

¶5.     Newton County Engineer Jimmy Kemp approved a final payment to Southland of $84,800.98. Southland claims that, due to a miscalculation, the correct amount due was $98,800.98. However, later on, when the problems with the road became apparent, the county engineer recommended to James Smith, a Newton County supervisor, that the County pay Southland $21,697.24 for the leveling work, but not for

2

the remainder of the work. Dissatisfied with the overall results of the project, the County refused payment. The County ultimately contended that the entire road had to be resurfaced again, including leveling work. Southland was forced to file its complaint to seek payment.

¶6. Evidence presented at trial by Southland included the testimony of Ronald W. Blackledge, President of Southland; Willie McDaniel, Southland's Superintendent; County Engineer Kemp; and County Supervisor Smith. Their testimony revealed that performing sealing work during the winter months was atypical and actually prohibited by the State Aid Specifications. Low temperatures during the winter months prevent rocks from adhering to the emulsion. Following completion of the road work, temperatures remained in the twenties for approximately one week. Based on this evidence, Southland argued at trial that the County was aware that performing sealing during the winter months was ill-advised. Nevertheless, the County requested the project be completed by December 30, 1999.

¶7. The County presented some evidence in an attempt to show that the workmanship and quality of the materials used by Southland was defective. County Engineer Kemp testified that Southland had a responsibility to furnish test results for the rock used on the road work. The rocks could have been out of specification due to moisture, dirt, or size. Bussy Clark, the inspector on location for the County, testified that he requested the test results, but he did not receive any sample reports on the emulsion or stone and thus had no way to tell if the emulsion and stone were good. Furthermore, the testimony of Jerry Cooley and James Smith revealed that the emulsion and rock that the County used in its simultaneously performed project, on the intersecting road, did adhere according to specifications. Therefore, based on this evidence, the County argued that the issue of defective material was properly before the jury.

## DISCUSSION

¶8.    The standard of review when considering the grant or denial of jury instructions is whether, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction. *Church v. Massey*, 697 So. 2d 407, 410-11 (Miss. 1997). A party is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction. *Tharp v. Bunge Corp*. 641 So.2d 20, 26 (Miss. 1994).

¶9.    On the other hand, it would be error to grant an instruction which is likely to mislead or confuse the jury as to the principles of the law applicable to the facts in evidence. *McCary v. Caperton*, 601 So.2d 866, 869 (Miss. 1992). Further, the court must view the instruction in light of all the other instructions which were given to determine whether the jury was properly instructed. *Munford, Inc. v. Fleming*, 597 So.2d 1282, 1286 (Miss. 1992). If other instructions granted adequately instruct the jury, a party may not complain of a refused instruction on appeal. *Purina Mills, Inc. v. Moak*, 575 So.2d 993, 996 (Miss. 1990). Lastly, the trial court has considerable discretion in instructing the jury. *Splain v. Hines*, 609 So.2d 1234, 1239 (Miss. 1992).

**I.    DID THE TRIAL COURT ERR IN REFUSING TO GIVE JURY INSTRUCTION P-12?**

¶10.   The trial court refused to give Southland's proposed jury Instruction P-12:

> You are instructed that a construction contractor who has followed plans or specifications furnished by the owner, and which have proven to be defective or insufficient, will not be responsible to the owner for loss or damage which results solely from the defective or insufficient plans or specifications, in the absence of negligence on the contractor's part, or any express warranty by him as to the plans and specifications being sufficient or free from defects.

4

Therefore, if you find by a preponderance of the evidence that the Plaintiff followed plans and specifications provided by the Defendant, that these plans and specifications were defective or insufficient, and that there was no negligence by the Plaintiff or express warranty provided by the Plaintiff, then you may find that the Plaintiff, Southland Enterprises, is not responsible to Newton County for any damage to the Chunky Duffee Road which resulted from these plans and specifications.

¶11.　Southland argues that the law is clear in Mississippi that when a construction contractor follows plans and specifications furnished by the owner which then prove to be defective or insufficient, it is not responsible to the owner for the loss of damage that results from the defective or insufficient plans or specifications when the contractor has not been negligent or provided any express warranty. ***Trustees of First Baptist Church of Corinth v. McElroy***, 223 Miss. 327, 334, 78 So. 2d 138, 141 (1955). Further, "if, without fault on his part, the contractor fulfills his obligations to complete the work in accordance with plans and specifications provided by the owner, he is not responsible for the adequacy of the final product." ***Mayor & City Council of City of Columbus v. Clark-Dietz & Associates-Engineers, Inc.***, 550 F. Supp. 610, 625 (N.D. Miss. 1982), *appeal denied sub nom.* ***Clark-Dietz & Assocs-Engineers, Inc. v. Basic Constr. Co.,*** 702 F.2d 67 (5th Cir. 1983). *See also* ***Employers Ins. of Wausau v. Miss. State Highway Comm'n***, 575 So. 2d 999, 1002 (Miss. 1990).

¶12.　Southland contends that the substantial evidence at trial showed that the road work problems occurred because the County required the project to be completed in December, when it is not recommended to perform sealing work. Southland submits that the refusal to grant Instruction P-12 was reversible error and that the case should be reversed and remanded for a new trial on the issue of damages only, as the jury has already found that Newton County is liable.

¶13.    The County argues that the proposed instruction would have been improper because it would have misled the jury and it would not have allowed the jury to consider the probability that Southland used defective materials. The trial court refused to give the instruction because it was "bothered about the issue of whether the material was defective or not."

¶14.    In addition, the County submits that the jury was adequately informed by Instruction D-3 that the State Aid Specifications were part of the contract and that the jury might consider those specifications in light of the evidence to determine whether Southland had fulfilled its obligation under the bid contact. Also, Instruction P-3 directed the jury that the burden of proof was on the County to prove that there was failure of consideration by Southland to complete the project in a workmanlike manner that would pass without objection in the trade.

¶15.    In this case, the jury was left to decide between two theories: (1) whether the County or Southland was at fault for allowing the road work to be performed during cold winter months; and (2) the probability of whether Southland used defective materials that could have contributed to the failure of rock to adhere to the road. Although the jury found for Southland, the jury must have either considered the possibility that Southland used defective material or it must have considered that the County was not entirely responsible for performing the work when the temperature was too low. This is evident from the jury's award of only $21,697.24, the cost for the completion of the leveling work alone. If the jury awarded the amount to Southland entirely on the basis of the probability that Southland used defective materials, then the jury's verdict was in accordance with the law. However, we find that if the jury considered Southland even partially responsible for performing the work when the temperature was too low, then the jury's verdict was in error according to the law. Unfortunately, the instructions given to the jury did not preclude the jury from

6

considering whether Southland was at fault for performing the road work during a time period that is not within the normal specifications.

¶16. Southland argues that, if P-12 had been granted, the jury might have awarded Southland the entire amount of the contract. The trial judge, on the other hand, was concerned that Instruction P-12 may have misled the jury into believing that it could not consider the probability that Southland used defective material. However, Instruction P-12 allows the jury to consider any negligence attributable to Southland. This Court finds that the jury, given Instruction P-12, could have still considered the probability that Southland used defective material.

¶17. Most importantly, Instruction P-12 would have ensured that Southland could not be liable for any damages resulting from the County's requirement that the project be completed by December 30, 1999. The County was aware that sealing work should not be performed during the colder winter months, yet it still required the work to be performed before December 30. Unfortunately, as a whole, Instruction D-3, which allowed the jury to consider the evidence in light of the State Aid Specifications, and Instruction P-3, which directed the jury that the burden of proof was on the County to prove that there was failure of consideration on the part of Southland to complete the project in a workmanlike manner, do not adequately instruct the jury on the law. Without Instruction P-12, there is a possibility that the jury might have considered Southland to be partly at fault for performing the road work at a time prohibited by the State Aid Specifications. According to *McElroy*, Southland should not be at fault for performing the construction work as per the specifications provided by the County. *McElroy*, 78 So. 2d at 141. The trial court erred in refusing Instruction P-12.

II. **DID THE TRIAL COURT ERR IN REFUSING TO AMEND THE FINAL JUDGMENT TO INCLUDE STATUTORY INTEREST AND ATTORNEY'S FEES?**

7

¶18.    In a letter dated January 6, 2000, Newton County Engineer Kemp recommended that the leveling work, which cost $21,697.24, was not in dispute and that the County pay for that work.  However, the County refused to make any payment.  Southland contends that because the leveling work was not in dispute, the circuit court should have amended the final judgment to include interest in the amount of 1 1/2 percent a month from February 5, 2000, 45 days after the invoice was submitted, until the time payment was made on the Final Judgment, December 17, 2000, in accordance with Miss. Code Ann. § 31-7-305 (2000).

¶19.    The County notes that the interest provisions in the statute only apply to those amounts which are not in dispute. Miss. Code Ann. § 31-7-305(3).  The County contends that there was a bona fide dispute as to the leveling work because the contract was an entire contract and not severable.  The jury was instructed that if Southland had substantially performed the terms of the contract, the jury was justified in awarding, on the basis of quantum merit, the reasonable value of the materials and services.  The trial court found that *Stanton & Associates, Inc., v. Bryant Construction Co.,* 464 So. 2d 499, 502 (Miss. 1985), was applicable to the case sub judice.  *Stanton* stands for the proposition that a suit based on quantum merit precludes recovery of prejudgment interest and attorney fees.  *See also **McLain v. West Side Bone & Joint Ctr.**,* 656 So.2d 119,  123 (Miss.1995).   The trial court reasoned that, notwithstanding the letter and testimony of Engineer Kemp, the County ultimately, before suit was filed, determined that it would reject the road work in its entirety.  The County's position was that the defect ran throughout the entire project.  Because Southland was awarded an amount in quantum merit, we find that the County is not liable for statutory interest or attorney's fees.

## CONCLUSION

¶20.    The jury was not adequately instructed on the law.  The instructions provided to the jury failed to address the rule of law which states that the contractor shall not be liable for defects in the specifications that are provided by the owner.  The proposed instruction would have allowed the jury to consider the probability that Southland was negligent for using defective material.  This Court concludes that the denial of Instruction P-12 resulted in prejudicial error; therefore, the ruling of the trial court is reversed.  Also, since the action was based on quantum merit, we find that an award of statutory interest or attorney's fees would be inappropriate.  The trial court did not err in denying an award of statutory interest or attorneys' fees.  Accordingly, the trial court's order denying an award of statutory interest and attorneys' fees is affirmed, but its judgment is reversed in part and this case is remanded for a new trial on damages only, consistent with this opinion.

¶21.    **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

        **PITTMAN, C.J., McRAE, P.J., EASLEY AND GRAVES, JJ., CONCUR.  SMITH, P.J., DISSENTS WITH SEPARATE OPINION JOINED BY WALLER, COBB AND CARLSON, JJ.**

        **SMITH, PRESIDING JUSTICE, DISSENTING:**

¶22.    In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole.  ***Coleman v. State***, 697 So.2d 777, 782 (Miss.1997).  If the instructions, when so read, fairly announce the law of the case and create no injustice, no reversible error will be found.  ***Id.***    Further, instructions on damages must furnish the jury with a guide to be used in awarding damages. ***Gerodetti v. Broadacres, Inc.***, 363 So.2d 265, 266 (Miss.1978).  In my view, considering all jury instructions given as a whole, this jury was adequately instructed.

¶23. Instruction P-12 was refused because of the trial court's concern about Southland's use of defective materials. The trial judge was concerned that the jury would be misled into believing that it could not consider the probability that Southland used defective materials. I agree with the trial court that confusion could result from the words found in the first paragraph of that instruction specifying that a contractor "will not be responsible to the owner for loss or damage which results *solely* from the defective or insufficient plans or specifications." Although that instruction goes on to say that there must be "no negligence by the Plaintiff or express warranty by the Plaintiff," the refused instruction unnecessarily overemphasizes Southland's dependence on the plans and specifications belonging to the county. Further, the cases cited by the majority and Southland, although correctly stating the law regarding Southland's responsibility to the County in regard to furnished specifications, fail to specifically address the issue of the use of defective materials, the county's sole theory of its case. Under contract law, the contractor is liable even in the absence of negligence and in the absence of express warranty because of the implied warranties that the work would be acceptable in the trade without objection. The evidence presented at trial clearly supports the jury's verdict.

¶24. There are two means for calculating damages in construction disputes such as this. Where a project is substantially completed according to plans and specifications, the measure of damages may be determined by: (1) the cost rule which is the cost of repairing the defects to make the building or structure conform to the specifications where such may be done at a reasonable expense if unreasonable economic waste is not involved, or (2) the diminished value rule which is the difference in the value of the property with the defective work and what the value would have been if there had been strict compliance with the contract. *Gerodetti v. Broadacres, Inc.,* 363 So.2d 265, 267-68 (Miss.1978). If substantial compliance with the contract has occurred and cost rule damages for complete compliance would cause

10

economic waste, the diminished value rule is used to measure damages. *Id.* at 268. This measures the difference in the value of the defective construction and that of the construction specified under the contract. *Id.* Stated in other terms, when there is substantial performance but the work fails to meet the specifications of the contract, the owner's damages are equal to the cost to remedy the defects or to do the work as required.

¶25. A more complete statement of the rule found in *Trustees of the First Baptist Church v. McElroy*, 223 Miss. 327, 78 So. 2d 138, 141(1955), is as follows:

> The rule has become well settled, in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results solely from the defective or insufficient plans or specifications, in the absence of negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects.

*Id.* In *McElroy*, this Court looked at all of the facts and circumstances before deciding that the plaintiff did not prove by the preponderance of the evidence that the defendant did not protect his work and that the defendant's negligence did not in any way contribute to the collapse of that building. *Id.* This Court found that it was beyond question that the basic underlying cause of the collapsed building was either faulty design, bad soil conditions or both. *Id.* The defendant had no responsibility for either of those things.

¶26. It is implied in every building contract that the work of the builder be performed in a good workmanlike manner, free from defect either in material or workmanship. *Gilmore v. Garrett*, 582 So. 2d 387 (Miss. 1991). In *Gilmore*, this Court addressed the issue of negligence in performance of a contract. Gilmore, the builder, testified that the plans and specifications were furnished to him and that he complied with those plans. *Id.* at 388. However, Gilmore made no soil borings or other soil preparatory

11

tests prior to construction nor did he advise that any be made. *Id.* At the time of construction and the time of trial, there was no custom or practice of builders to make such test nor did the VA or FHA require such testing. *Id.* Several years after construction, the house developed serious cracks as a result of yazoo clay. *Id.* at 389. Gilmore was sued by the owners who alleged breach of the implied warranty to build in a workmanlike manner and negligent construction. *Id.*

¶27.    This Court quoted a North Carolina case which outlined the duty:

> The duty may arise specifically by mandate or statute, or it may arise generally by operation of law under application of the basic rule of common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others...Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract...But it must be kept in mind that the contract creates only the relation out of which arises the common law duty to exercise ordinary care. Thus in legal contemplation the contract merely creates the state of things which furnishes the occasion of the tort.

*Id.* at 391 (quoting *Pinnix v. Toomey*, 87 S.E.2d 893, 897-98 ( N.C. 1955)). This Court also went further in describing such a duty in stating that:

> Where a person contracts to do certain work he is charged with the common law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract, and the parties may not substitute a contractual standard for this obligation...Accompanying every contract is a common law duty to perform with care, skill and reasonable experience, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract.

*Gilmore*, 582 So. 2d at 391 (quoting 65 C.J.S. Negligence, §4(6), pp 494, 496 (1966)). Following along these guidelines, our Court went on to state that the public no longer tolerates "shoddy" products and services, whatever the source. *Id.* at 392. This Court stated that it would grant relief whenever the

12

product sold or service rendered is "less than the customer or client is fairly and reasonably entitled to expect under current and existing states of skill, knowledge and technology." *Id.*

¶28.    The next issue addressed was whether Gilmore's compliance with the plans and specifications and the subsequent inspection and passage on his work by the VA relieved him of liability to the homeowners. *Id.* at 393. This Court held that the VA standards, the plans and specifications and trade customs were not conclusive on Gilmore's negligence. *Id.* As a matter of law, his compliance with these guidelines alone did not relieve him of his obligation. *Id.* This Court observed that:

> It is well settled in the jurisprudence that a contractor is bound to warrant his work and is responsible for damages occasioned by defective workmanship or installation. It is implied in every building contract that the work will be performed in a skillful, careful, diligent and good workmanlike manner.

*Id.* at 395 (quoting *Wetmore v. Blueridge*, 391 So. 2d 952, 953 (La. Ct. App. 1980)). In sum, this Court stated:

> It is of course true that a builder/contractor in an ordinary case should not be required to go beyond the plans and specifications, they after all being a part of his contract spelling out his obligations. Neither should plans and specifications which clearly do not take into account a construction problem of which the builder/contractor, the man with expertise should be well aware, remove from him all duty to warn. In such case, the plans and specifications should not constitute an absolute defense.

*Id.* at 396 (citations omitted).

¶29.    Having emphasized our controlling case authority, we need only apply it to the case at bar. In the case sub judice, the trial court correctly noted that the issue of defective materials was before the jury. The County Engineer, Jimmy Kemp, testified to the effects of use by Southland of defective materials. He testified that when the CRS-2 emulsion used was not within specifications that the rock would not adhere. He also testified that the rock would not properly adhere if the rock was dirty, contained moisture or was not the correct size. He testified that Southland failed to furnish any test results to the inspector on location

13

even though they were responsible for doing so. Further, the on site inspector, Bussy Clark testified to having requested those results. He verified that he did not receive any sample reports on the emulsion or the stone. Because he had no samples, he had no way to tell whether the materials used by Southland were adequate.

¶30. The evidence presented at the trial clearly supports the jury's verdict which was for an amount less than the original contract price between Southland and Newton County such finding clearly reflects the view of the jury that Southland used defective materials. The jury, properly instructed, found that the County would incur additional costs to re-pave the road as a result of the use of defective materials by Southland. As this Court has stated, we do not consider rejected jury instructions in a vacuum. *Wright v. Stevens,* 445 So.2d 791, 795 (Miss.1984). That the rejected instruction may state a sound principle of law does not mean its refusal was error. *Id.* Rather, we look at all the instructions given. *Id.* We consider the court's total charge to the jury. *Id.* If the point encompassed by the rejected instruction was fairly included in other instructions given the jury, which in this case, it was, reversal is not required. *Id.* (citing *Hickombottom v. State*, 409 So.2d 1337, 1339 (Miss.1982); *Norman v. State*, 385 So.2d 1298 (Miss.1980); *Knight v. State*, 57 So.2d 161 (Miss.1952)). The jury was properly instructed and its verdict should be upheld.

¶31. For these reasons, I respectfully dissent.

**WALLER, COBB AND CARLSON, JJ., JOIN THIS SEPARATE OPINION.**

14